# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DO NO HARM and DR. TRAVIS MORRELL,

*Plaintiffs*,

v.

DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN

*Defendants*.

Case No. _____

## COMPLAINT

1.  Doctors, who are entrusted to care for people at their most vulnerable, should know this best: "Racial discrimination is invidious in all contexts." *SFFA. v. Harvard*, 600 U.S. 181, 214 (2023) (cleaned up). It "demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220 (cleaned up).

2.  But Find A Black Doctor, an online directory for physicians and dentists, openly discriminates against doctors by race. *See, e.g.*, Find A Black Doctor, *Why You Should Look For "A Black Primary Care Doctor Near Me"*, perma.cc/GVV4-437A (archived Apr. 3, 2026). The directory limits eligibility to "black physicians and dentists in active clinical practice." Find A Black Doctor, *About Us*, perma.cc/LJ5K-LD4W (archived Apr. 3, 2026).

1

3. The directory is unlawful. And for Dr. Dina Strachan—the dermatologist who founded and operates the directory—it is violation of ethical obligations. Under New York law it is "professional misconduct" for a doctor to refuse to "provide professional service to a person because of such person's race." N.Y. Educ. Law §6530(10). But the directory excludes all non-black doctors from its services.

4. The directory's race-based exclusion is based on the pernicious ideology of "racial concordance." Racial concordance is the neosegregationist belief that patients do worse when their doctor is a different race and better if their doctor is the same race. This ideology sows distrust between patients and doctors who are different races. And it prioritizes race over medical skill, judgment, and experience. Unsurprisingly, the belief has been thoroughly debunked. "Medical research does not support racial concordance." I. Kingsbury & J. Greene, *Racial Concordance in Medicine: The Return of Segregation* at 3, Do No Harm, perma.cc/54EF-CS6D (archived May 3, 2026). Endorsing it is "a recipe for even worse health outcomes for members of every race." *Id.*

5. The directory's race-based exclusion of non-black doctors is illegal. *See, e.g.*, *Nat'l Org. for Women v. State Div. of Hum. Rts.*, 314 N.E.2d 867, 871 (N.Y. 1974) (jobs columns in newspaper separated by sex were discriminatory). As relevant here, the directory is a contract. Doctors receive valuable advertising exposure to, and potential opportunities to work with, new patients. In exchange, the directory makes doctors agree to various terms—including holding the website harmless for various

grievances—and it extracts permission to use the doctor's personal information on its listings, which gives them their commercial value. *See About Us.*

6. The directory's race-based exclusion of non-black doctors violates many laws—most notably 42 U.S.C. §1981, the landmark federal statute that bans racial discrimination in contracting.

7. Do No Harm has members, including Dr. Travis Morrell, who are victims of Defendants' race discrimination. Do No Harm and Dr. Morrell are entitled to relief.

**PARTIES**

8. Plaintiff Do No Harm is a nationwide, grassroots, 501(c)(3) membership organization. Its more than 50,000 members include healthcare professionals, students, patients, and policymakers. DNH's mission is to ensure that medicine is driven by scientific evidence rather than ideology. To that end, the organization opposes the idea that effective patient care is determined by the race of their doctor, rather than by the skill of the attending physician. Dr. Travis Morrell is a member of DNH.

9. DNH is a genuine, voluntary membership association. Its mission and outreach are highly public and detailed on its public-facing website. Members voluntarily join and receive regular communications about the association's litigation and other activities. DNH has represented the interests of many of its members in several federal cases. It brings this lawsuit in a representational capacity on behalf of its members who would have standing to sue on their own.

3

10.     Plaintiff Dr. Travis Morrell is a licensed physician and double board-certified dermatologist and dermatopathologist. He also has a Master of Public Health degree. Dr. Morrell's medical practice focuses on the diagnosis and treatment of serious skin conditions, including melanoma, carcinoma, autoimmune disease, and cutaneous effects of systemic disorders. Dr. Morrell serves patients of all races, including black patients.

11.     Defendant DRDINAMD LLC is a New York-based limited liability company. It "produce[s]" the findablackdoctor.com databases. *See* Find A Black Doctor, *Terms of Use*, perma.cc/T9D2-PAT8 (archived May 3, 2026). It is headquartered in New York.

12.     Defendant Dr. Dina D. Strachan is a board-certified dermatologist. She founded the Find A Black Doctor directory and continues to oversee its operation. *See* Find A Black Doctor, *Media*, perma.cc/EL7B-9CUP (archived May 3, 2026); BlackNews.com, '*Find A Black Doctor' Online Directory Now Lists Health Professionals in All 50 States*, perma.cc/V5RX-U6SV (archived May 3, 2026).

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction under 28 U.S.C. §1331.

14.     Venue is proper in this district under 28 U.S.C. §1391 because all Defendants reside in this State, at least one Defendant resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## BACKGROUND

### A.    Find A Black Doctor operates a directory of active physicians.

15.    Find a Black Doctor is an internet directory of physicians in active clinical practice. It attempts to "improve health outcomes particularly in the African American community." *About Us.*

16.    The directory lists many different types of physicians, including primary-care physicians. Primary-care physicians "act as the first point of contact for patients and coordinate their healthcare needs, referring them to specialists when necessary." *Why You Should Look.* They also provide a variety of important services, including "preventive care, routine check-ups, management of chronic conditions, and treatment of acute illnesses." *Id.*

17.    To apply to have their business listed on the directory, physicians must complete an online form and provide information, including their name, address, education, the methods of payment they accept, and whether their business is black owned. *See* Find A Black Doctor, perma.cc/N6QZ-2XDY (archived Apr. 4, 2026).

18.    In exchange for the opportunity to be listed, doctors must give up certain rights and agree to certain obligations. Physicians agree to "hold harmless Find A Black Doctor" from claims arising out of their use of the website—including claims related to "intellectual property rights"—and they agree to the "exclusive legal jurisdiction and venues of the Courts of Nassau County, New York, and the United States District

5

Court of the Southern District of New York with respect to" matters relating to use of the website. *See Terms of Use.*

19.    Physicians likewise relinquish control over their data and allow the directory to "retain" any "information" disclosed by the physician in return for the chance to access valuable advertising exposure. *See* Find A Black Doctor, *Privacy Policy*, perma.cc/VQC5-5LRT (archived May 9, 2026).

20.    Doctors must also "consent to have [their] information listed" on the directory and "represent that the information submitted is correct." *See* Find A Black Doctor, perma.cc/N6QZ-2XDY (archived Apr. 4, 2026). The physician further accepts the "responsibility" to keep their "personal information and web links accurate, updated, and complete." *See Terms of Use.* The directory enforces this obligation by "review[ing] and check[ing]" the "information and web links … for accuracy, authenticity, and completeness." *Id.* The directory will "de-activate and/or discontinue" the pages of any physician who fails to discharge their obligations. *Id.*

21.    The directory, in turn, builds its business model around the unique value associated with the obligations it imposes on doctors. Indeed, it advertises that being listed on its directory is beneficial precisely because the directory does not use "information from purchased lists," as many other directories do. *See About Us.* And since doctors must opt in to be listed on the directory, they "have an investment in keeping their information up-to-date." *Id.* More accurate profiles means that patients do not become "frustrated having to sort through a high number of unhelpful profiles

of doctors who never intended to be listed in the first place" and can more easily and directly locate an accurate profile of the kind of physician they seek. *Id.* The directory accordingly markets its listings as a uniquely "high quality" catalogue that avoids the problems with "incorrect or stale" information that can plague other directories. *Id.*

### B.    Find A Black Doctor excludes doctors from its directory based on race.

22.    True to its name, Find A Black Doctor does not allow all qualified doctors to list their practices, even if those doctors treat many or mostly black patients. Only "black physicians and dentists" are eligible. *Id.* Other races cannot be listed or meaningfully apply.

23.    This racial discrimination is intentional. Indeed, the directory's website explains that the idea for the directory came out of dissatisfaction with an earlier website "that wasn't specifically racially targeted." The directory sought to change that by being racially exclusive. *Id.*

24.    Defendants believe this exclusion is vital. They claim that, for black men, "the importance of seeking a primary care doctor who shares their racial or cultural background cannot be overstated." *See Why You Should Look.*

25.    Indeed, the directory's racial separatism goes even further, arguing that "just living somewhere where there are more black primary care doctors around" will have a "positive impact" on the health of black men—whether those black men see the physicians or not. *Id.*

7

26.    The directory bases its belief that "black men should look for a black male doctor" in harmful, offensive, and racist stereotypes. *Id.*

27.    The directory believes that black men are "more likely to follow through with preventative health screenings if their doctor was also a black man." *Id.* And it asserts that having "a black male primary care doctor" will help bridge "disparities" in "health outcomes" by "fostering a deeper understanding of the unique health concerns and experiences faced by black men." *Id.* It believes that "a black male doctor" will be able to better address "chronic conditions like hypertension and diabetes" and provide "culturally competent care and advocacy." *Id.*

28.    These statements are unsupported and false.

29.    Any racial group might show a disparity relative to other groups with respect to certain health outcomes. For example, among those conditions more prominent in white individuals are type 1 diabetes and multiple sclerosis. *See* CDC, *Diabetes - Type 1 Diabetes* (May 15, 2024), perma.cc/Z8DY-RQ9D; Medical Press, *Whites Have the Highest Prevalence of Multiple Sclerosis in the United States* (May 17, 2023), bit.ly/3Rjzfd2.

**C.    Find A Black Doctor's discriminatory listing requirements injure members of Do No Harm, including Dr. Travis Morrell.**

30.    Do No Harm has members who were and are harmed by the directory's racial discrimination.

31. One such member is Dr. Travis Morrell, a board-certified dermatologist and dermatopathologist. He satisfies the race-neutral eligibility criteria because he is "active clinically" and "board-certified in [his] field of clinical practice." *See* Find A Black Doctor, *How To List Your Practice*, perma.cc/DV8N-EKSW (archived Apr. 4, 2026).

32. But Dr. Morrell is not black. He is white. And his practice is not black-owned.

33. Dr. Morrell treats patients of all races, and he has treated many black patients in the past. He is a dermatologist, a specialty that the directory says is especially important for black patients. He is an expert in skin cancers, including cutaneous T-cell lymphoma and dermatofibrosarcoma protuberans, which the directory explicitly recognizes as presenting particularly acute risks for black patients. *See* Find A Black Doctor, *Skin Cancer in Blacks*, perma.cc/SG87-SBJ2 (archived Apr. 3, 2026).

34. Dr. Morrell wants to use his expertise to better the lives of his patients, and he wants patients to be able to find him to receive healing. He sincerely wants to be listed on the directory.

35. Adding Dr. Morrell—who operates out of Grand Junction, Colorado—to the directory would be a major benefit. The directory lists only three doctors in all of Colorado. It lists no doctors in Grand Junction. And it lists no dermatologists in the entire State.

36. Dr. Morrell applied to be listed on the directory on December 23, 2025.

9

37.    For months he heard nothing. On February 23 he followed up by sending an email asking for an update on his application. But he once again encountered only silence. Consistent with the directory's blacks-only criterion, Dr. Morrell's application was not accepted.

38.    After waiting for nearly five months and having multiple communications ignored, Dr. Morrell understands his application to have been constructively rejected because he is white. *Cf. Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 198-200 (5th Cir. 2000); *Schroeder v. Chicago*, 927 F.2d 957, 960 (7th Cir. 1991) ("[A]t some point delay must ripen into deprivation, because otherwise a suit alleging deprivation would be forever premature.").

39.    Dr. Morrell maintains his intent to be listed in the directory. If a court ordered Defendants to end their racial discrimination, Dr. Morrell would immediately agree to be listed. And if necessary, he would resubmit his application and complete any other required steps at the earliest available opportunity.

40.    Dr. Morrell is participating in this case both as an individual plaintiff and as a standing member of Do No Harm. Do No Harm and Dr. Morrell seek all the same relief, except that only Dr. Morrell seeks compensatory and punitive damages and an injunction specific to his application.

## CLAIM FOR RELIEF
### Violation of the Civil Rights Act of 1866
### 42 U.S.C. §1981

41.    Plaintiffs repeat and reallege the preceding allegations.

42.     Under §1981, "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts." 42 U.S.C. §1981(a). The statute has a private right of action for equitable relief and damages, including compensatory and punitive damages. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

43.     Section 1981 bans racial discrimination in contracting by private actors, including Defendants. *See AAER v. Founders First*, 2024 WL 3625684, at *3 (N.D. Tex. July 31) (citing *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986)); *Johnson*, 421 U.S. at 459-60.

44.     The statute's "broad terms" bar discrimination "against, or in favor of, any race," including against whites. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). Titled "Equal rights under the law," §1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019), by protecting the "equal right of all persons … to make and enforce contracts without respect to race," *Domino's Pizza v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up).

45.     The statute protects the right to "make … contracts," 42 U.S.C. §1981(a), so whether "a contractual relationship … already exist[s]" is irrelevant because the law "protects the would-be contractor along with those who already have made contracts," *Domino's*, 546 U.S. at 476. Because of that fact, a defendant violates "§1981 when, for racially motivated reasons, they prevented individuals who 'sought to enter into contractual relationships' from doing so." *Id.* The directory is doing so here.

11

46. The directory is a contract. Under §1981, a contract is merely "an agreement to do, or refrain from doing, a particular thing, upon sufficient consideration." *AAER v. Fearless Fund Mgmt.*, 103 F.4th 765, 775 (11th Cir. 2024). The directory fits that definition: It grants doctors access to a potentially lucrative revenue stream in exchange for accepting various terms, including the obligation to maintain the high-quality, personally verified listings that set the directory apart from other directories. *Id.*; *see also Founders First*, 2024 WL 3625684, at *3 n.7.

47. Doctors also have contracts with their patients. *See Downing v. Phelps Mem'l Hosp.*, 2020 WL 4570440, at *7 (S.D.N.Y. Aug. 7). The directory is an "intermediary and conduit connecting" those patients and doctors. *Daniels v. Pipefitters' Ass'n*, 945 F.2d 906, 915 (7th Cir. 1991). So when the directory "interfere[s]" to "intentionally depriv[e]" certain doctors of the opportunity "to enter into contracts" with patients based on their race, that "discrimination falls squarely within the prohibition of §1981." *Id.*

48. The directory intentionally discriminates based on race. "[P]roof of a facially discriminatory … policy" is "direct evidence of discriminatory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). That "direct evidence" is present here because the directory facially discriminates against all non-black doctors by excluding them from the directory. And even if the directory was facially neutral, it intentionally discriminates based on race in effect and by design. Indeed, the directory's name—Find A Black Doctor—tells physicians and patients alike who is welcome and who is not. *Accord Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977).

Defendants admit the directory is only for "black physicians and dentists." *See About Us.* And the fact that 100% of the doctors listed on the directory are black is a stark disparity that alone proves Defendants' race-based intent.

49.     Because §1981 applies to the directory, the directory's racial discrimination is subject to strict scrutiny. *See Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003); *Adarand Constructors v. Pena*, 515 U.S. 200, 227 (1995). Strict scrutiny is "the most demanding test" known to law. *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). And Defendants bear the burden of proving that the directory satisfies that test by showing that its racial exclusion is "narrowly tailored" to further a "compelling interest." *Fisher v. UT-Austin*, 570 U.S. 297, 310 (2013) (cleaned up); *SFFA*, 600 U.S. at 206-07. Defendants cannot meet that "daunting" standard. *SFFA*, 600 U.S. at 206.

50.     Defendants' interests are not compelling. The Supreme Court "ha[s] identified only two compelling interests" that satisfy strict scrutiny. *Id.* at 207. "One is remediating specific, identified instances of past discrimination that violated the Constitution or a statute," and the other is "avoiding imminent and serious risks to human safety in prisons." *Id.* Neither exists here. The directory's application does not even ask doctors if they have suffered prior discrimination. And an amorphous interest in diversity is not compelling. *See id.* at 220.

51.     The directory is not narrowly tailored to achieve any compelling interest. By barring all non-blacks from the directory, Defendants effectively impose an illegal "quota," which is not narrowly tailored to any permissible goal. *City of Richmond v. J.A.*

13

*Croson Co.*, 488 U.S. 469, 507 (1989). The directory's race-based exclusion lacks any "logical end point." *SFFA*, 600 U.S. at 221. The directory's racial discrimination is based on impermissible racial stereotyping. *See id.* at 218. And to state the obvious, a blanket exclusion of all non-blacks operates as a "negative" for non-blacks. *Id.* Defendants accordingly cannot show "the most exact connection between justification and classification" that strict scrutiny requires. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 (1986).

52.    Section 1981 authorizes punitive damages when the defendant has "engaged in a discriminatory practice … with malice or reckless indifference to the federally protected rights of an aggrieved individual." *Wiercinski v. Mangia 57*, 787 F.3d 106, 115 (2d Cir. 2015).

53.    Defendants' explicit racial exclusion demonstrates "malice or reckless indifference to the federally protected rights" of doctors. *Id.* All racial discrimination is invidious, and Defendants intentionally discriminate against doctors based on the immutable color of their skin. As sophisticated actors in the medical services industry, Defendants know racial discrimination is illegal. *See United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 744 (7th Cir. 2021). Yet Defendants proudly acknowledge the directory is open only to "black physicians and dentists." *See About Us.*

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and provide the following relief:

14

A.    A declaratory judgment that the directory violates 42 U.S.C. §1981.

B.    A permanent injunction prohibiting Defendants from excluding doctors from the directory based on race, seeing the race of applicants to the directory, or otherwise considering race as a factor when deciding who can be listed on the directory.

C.    A permanent injunction ordering Defendants to accept Dr. Morrell's application and add him to the directory.

D.    Compensatory and punitive damages to Dr. Morrell.

E.    Nominal damages.

F.    Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

G.    All other relief that Plaintiffs are entitled to.

Dated: May 19, 2026

Respectfully submitted,

 /s/ Daniel M. Vitagliano
Thomas R. McCarthy*
Cameron T. Norris*
Frank H. Chang*
Daniel M. Vitagliano†
    SDNY Bar No. 5856703
James E. Marmaduke*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
dvitagliano@consovoymccarthy.com
jmarmaduke@consovoymccarthy.com

* Pro hac vice applications forthcoming
† Supervised by principals of the firm admitted to practice in VA

15