**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DO NO HARM and DR. TRAVIS MORRELL,<br><br>Plaintiffs,<br><br>v.<br><br>DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN,<br><br>Defendants. | Case No. 1:26-cv-04152-CM<br><br>Judge Colleen McMahon |

**<u>DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND ............................................................................................................................2

I.    The Find A Black Doctor Website Strives to Improve Health Outcomes for the African
      American Community............................................................................................................ 2

II.   The Find A Black Doctor Website Includes an Online Form for Physicians. .................... 2

III.  Dr. Morrell Submitted His Information Through the Online Form................................... 3

LEGAL STANDARD......................................................................................................................4

ARGUMENT ..................................................................................................................................4

I.    Find A Black Doctor Is a Curated Directory and Does Not Involve Contracts................. 5

      A.    Defendants Do Not Enter Contracts with the Listed Doctors.................................5

            i.    Defendants' Choice to Feature a Doctor in the Curated Listing Does Not
                  Create a Contract.........................................................................................6

            ii.   Physicians Do Not Provide Consideration to Defendants in Exchange for
                  Listing. .........................................................................................................8

                  a.    Vague Responsibilities Buried in the Terms of Service Cannot Serve as
                        Consideration for the Listings............................................................8

                  b.    The Listed Doctors' Consent to Share Data Is Not Made in Exchange for the
                        Listing. ...............................................................................................10

                  c.    The Terms of Use Are Made in Exchange for Accessing the Website, Not in
                        Exchange for the Listing. ...................................................................11

            iii.  Plaintiffs' Analogies to Fearless Fund and Founders First Fail............................11

      B.    Plaintiffs' Section 1981 Claim for Interference with Prospective Third-Party
            Contract Also Fails. .................................................................................................12

II.   Plaintiffs' Section 1981 Claim Should Be Dismissed Because the First Amendment
      Protects Defendants' Expression. ...................................................................................... 15

      A.    Choosing Information to Include and Exclude from the Find A Black Doctor
            Directory Is Protected Editorial Curation Under the First Amendment. ...............15

      B.    The Expressive Intent of the Find A Black Doctor Index Further Supports the
            Noncontractual Nature of the Listings...................................................................17

III.  Plaintiffs Should Be Denied Leave to Amend.................................................................. 18

CONCLUSION...............................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Alliance for Equal Rights v. Fearless Fund Mgmt. LLC*,
  103 F.4th 765 (11th Cir. 2024) ....................................................................6, 11, 12

*American Alliance for Equal Rights v. Founders First Community Development
  Corporation*,
  No. 4:24-cv-00327, 2024 WL 3625684 (N.D. Tex. July 31, 2024)..................................11, 12

*Ams. For Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021)........................................................................................17

*Annabi v. New York Univ.*,
  No. 22-CV-3795, 2023 WL 6393422 (S.D.N.Y. Sep. 29, 2023)................................6, 7, 8, 10

*Bampoe v. Coach Stores, Inc.*,
  93 F. Supp. 2d 360 (S.D.N.Y. 2000).................................................................4, 5

*Bathold v. Hugo Boss Retail, Inc.*,
  No. 25-CV-3045 (CM), 2026 WL 1679415 (S.D.N.Y. June 10, 2026)
  (McMahon, J.)...............................................................................................4

*Carter v. Ralph Lauren Corp.*,
  683 F. Supp. 3d 400 (S.D.N.Y. 2023).....................................................................9

*Cheves v. Trs. of Columbia Univ.*,
  931 N.Y.S.2d 877 (1st Dep't 2011) .......................................................................7

*Chiapparelli v. Baker. Kellogg & Co.*,
  252 N.Y. 192 (1929) ........................................................................................7

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985)........................................................................................17

*Daniels v. Pipefitters' Ass'n Loc. Union No. 597*,
  945 F.2d 906 (7th Cir. 1991) .......................................................................12, 14, 15

*Garcia v. Bill Me Later, Inc.*,
  No. 13-CV-8701, 2015 WL 4578613 (S.D.N.Y. July 28, 2015) .............................................4

*Ginx, Inc. v. Soho All.*,
  720 F. Supp. 2d 342 (S.D.N.Y. 2010)
  (McMahon, J.)..........................................................................................4, 13, 14

*Groome Res. Ltd. v. Parish of Jefferson*,
  234 F.3d 192 (5th Cir. 2000) ..................................................................................................3

*Hines v. Overstock.com, Inc.*,
  380 F. App'x 22 (2d Cir. 2010) ..........................................................................................9, 10

*Jackson v. Wells Fargo Home Mortg.*,
  No. 15-CV-5062, 2018 WL 8369422 (E.D.N.Y. Aug. 10, 2018)............................................7

*Jian Zhang v. Baidu.com Inc.*,
  10 F. Supp. 3d 433 (S.D.N.Y. 2014)................................................................................16, 17

*Klauber Bros. v. Westchester Lace Inc.*,
  No. 87 CIV. 7370, 1989 WL 31679 (S.D.N.Y. Mar. 30, 1989) ....................................7, 8, 10

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.*,
  574 F. Supp. 3d 205 (S.D.N.Y. 2021)................................................................................5, 6

*Lebedev v. Blavatnik*,
  193 A.D.3d 175 (1st Dep't 2021) ..........................................................................................6

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024)..............................................................................................................15

*Owoyemi v. Credit Corp. Sols. Inc.*,
  596 F. Supp. 3d 514 (S.D.N.Y. 2022).................................................................................18

*Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc.*,
  No. 21-CV-5749, 2023 WL 7222736 (E.D.N.Y. Nov. 2, 2023)............................................10

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
  487 U.S. 781 (1988)..............................................................................................................17

*Robledo v. Bond No. 9*,
  965 F. Supp. 2d 470 (S.D.N.Y. 2013)...................................................................................13

*Runyon v. McCrary*,
  427 U.S. 160 (1976)..............................................................................................................17

*Schroeder v. City of Chicago*,
  927 F.2d 957 (7th Cir. 1991) ..................................................................................................3

*Spain v. Ball*,
  928 F.2d 61 (2d Cir. 1991)....................................................................................................18

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017)..................................................................................................18

*Van Bortel v. Ford Motor Co.*,
  621 F. Supp. 3d 380 (W.D.N.Y. 2022) ..........................................................................8, 10, 11

**Statutes**

42 U.S.C. § 1981 ........................................................................................................... *passim*

**Other Authorities**

U.S. Const. amend. I ..................................................................................................... *passim*

Fed. R. Civ. P 12(b)(6) ...................................................................................................4, 18

Fed. R. Civ. P. 15(a)(2) ......................................................................................................18

Restatement (Second) of Contracts § 33 (Am. L. Inst. 1981) ..............................................7

**INTRODUCTION**

Plaintiffs attempt to express their discontent with the mere existence of Find A Black Doctor, a free online directory that publishes a curated list of Black physicians for patients seeking a healthcare provider of the same race, by alleging it violates Section 1981's contract clause. But despite Plaintiffs' attempt, Section 1981 protects only the right to "make and enforce contracts," and Plaintiffs' Complaint fails to identify any contract at all.

A free, voluntary online directory listing—without any fee, reciprocal promise, or guaranteed benefit—is not a contract. There is no bargained-for exchange sufficient to establish consideration. Physicians do not give anything to Dr. Dina Strachan in exchange for a listing. To the extent those physicians benefit from being listed, that benefit comes from Dr. Strachan's unilateral decision that listing a physician furthers her goal to provide high-quality information about Black physicians and dentists in active clinical practice for patients when that is their preference. The physicians have no contractual right to benefit from Dr. Strachan's speech, which she can withdraw at any time and for any reason. Because Plaintiffs have not pled facts which could support a claim that Dr. Strachan enters into a contractual agreement with *any* physician, Plaintiffs cannot support their claim that Dr. Strachan discriminated against Dr. Travis Morrell by not adding him to the directory. Section 1981 simply does not reach the challenged actions. Furthermore, the First Amendment freedom of expression protects Dr. Strachan's editorial curation of the online directory.

Therefore, even accepting Plaintiffs' allegations as true, the Complaint fails as a matter of law because there is no contract, no identifiable injury, and the First Amendment bars the relief sought.

**BACKGROUND**

**I.      The Find A Black Doctor Website Strives to Improve Health Outcomes for the African American Community.**

As alleged in the Complaint,[1] Find A Black Doctor is a website of which the "stated purpose" is to "improve health outcomes particularly in the African American community." Compl. ¶ 15.  The directory's approach is based on research that shows "the importance of seeking a primary care doctor who shares their racial or cultural background cannot be overstated" because Black "men are 'more likely to follow through with preventative health screenings if their doctor [is] also a [Black] man.'"  *Id.* ¶¶ 24, 27.  Additionally, "'a [Black] male primary care doctor'" can help bridge "'disparities'" in health care by "'fostering a deeper understanding of the unique health concerns and experiences faced by [Black] men'" and provide "'culturally competent care and advocacy.'"  *Id.*  Find A Black Doctor hosts articles written by physicians addressing the health concerns of Black patients, *id.* ¶¶ 2, 33, and maintains "an internet directory of physicians in active clinical practice," *id.* ¶¶ 15–16, an idea that arose out of "dissatisfaction with an earlier website 'that wasn't specifically racially targeted.'"  *Id.* ¶ 23.  Consistent with its mission, the directory curates its listing of Black physicians, *id.* ¶ 22, which is the component Plaintiffs challenge under 42 U.S.C. § 1981.  *Id.* ¶¶ 3, 41–53.

**II.     The Find A Black Doctor Website Includes an Online Form for Physicians.**

The directory allows physicians to complete an online form, providing their name, address, education, payment methods, and whether their business is Black owned, but not their race.  Find A Black Doctor, perma.cc/N6QZ-2XDY ("Web Form"); *see also* Compl. ¶ 17 (incorporating Web Form by reference).  By submitting the form, physicians "consent to have their information listed"

---

[1] For purposes of this Motion, Defendants assume all well-pled facts as true.  Defendants reserve all rights to deny or otherwise contest any of those facts should this litigation progress.

on the website, though they do not pay to be listed, Compl. ¶¶ 17–21, and are informed that Find A Black Doctor "reserves the right to remove" profiles at any time. *See* Compl. ¶ 17; *see also* Web Form.

The website also maintains Terms of Use and a Privacy Policy; both are available to every visitor of the website regardless of race. Find A Black Doctor, perma.cc/T9D2-PAT8 ("Terms of Use"); *see also* Compl. ¶ 11 (incorporating Terms of Use by reference); Find A Black Doctor, perma.cc/VQC5-5LRT ("Privacy Policy"); *see also* Compl. ¶ 19 (incorporating Privacy Policy by reference). Under the Privacy Policy, when a visitor uses a form to "post information," subject to Dr. Strachan's review and decision, the website "may retain such information." *See* Privacy Policy; *see also* Compl. ¶ 19.

## III.    Dr. Morrell Submitted His Information Through the Online Form.

Plaintiff Dr. Travis Morrell is a white, licensed physician and board-certified dermatologist and dermatopathologist, and his practice is not Black owned. *Id.* ¶¶ 10, 31–32. Dr. Morrell alleges he submitted his information through the online form on December 23, 2025, and followed up by email on February 23, 2026, without receiving a response. *Id.* ¶¶ 36–37. He maintains that he wants to be listed in the directory. *Id.* ¶ 39.

Although Plaintiffs do not allege that Dr. Morrell received any communication from Dr. Strachan rejecting him, Plaintiffs allege that his submission was an "application" that Defendants "constructively rejected," and that listing him on the directory would constitute a contract.[2] *Id.* ¶¶ 38, 46.

---

[2] The Complaint does not reference, and Defendants are unaware of, any statute or legal holding supporting the proposition that a private party has a certain number of days to respond to an unsolicited application before "constructive" rejection sets in. Rather, the law which Plaintiffs include in their Complaint relates to public agencies with a statutory mandate to provide timely benefits to applicants. *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 198–200 (5th Cir. 2000); *Schroeder v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991). Tellingly, the Complaint

3

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bathold v. Hugo Boss Retail, Inc.*, No. 25-CV-3045 (CM), 2026 WL 1679415, at *3 (S.D.N.Y. June 10, 2026) (McMahon, J.).

Section 1981 "protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race," which includes the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *Garcia v. Bill Me Later, Inc.*, No. 13-CV-8701, 2015 WL 4578613, at *2 (S.D.N.Y. July 28, 2015) (cleaned up) (citing *Domino's Pizza v. McDonald*, 546 U.S. 470, 474–75 (2006)); 42 U.S.C. § 1981(b). As a result, Section 1981 offers relief only "so long as the plaintiff has or would have rights under [an] existing or proposed contract." *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 357 (S.D.N.Y. 2010), *as corrected* (Aug. 19, 2010) (cleaned up). To state a claim under Section 1981, a plaintiff must show "the existence of a contractual relationship" within the "ordinary" meaning of contract. *Bampoe v. Coach Stores, Inc.*, 93 F. Supp. 2d 360, 375 (S.D.N.Y. 2000).

**ARGUMENT**

Here, Plaintiffs' Section 1981 claim fails for two independent reasons. *First*, Plaintiffs fail to allege facts showing that the alleged discrimination concerned the making or enforcing of a contract. Neither Plaintiffs' alleged relationship with Defendants nor any listed doctor's relationship with Defendants upon submitting an online form is contractual, and the relationship between Dr. Morrell and hypothetical future patients—Plaintiffs' "conduit" theory—is too

---

does not allege that Defendants were ever aware of Dr. Morrell's submission prior to the filing of the Complaint.

attenuated to support a Section 1981 claim for prospective interference with third-party contracts. *Second*, the First Amendment protects Defendants' right to curate that list as they see fit.

### I.       Find A Black Doctor Is a Curated Directory and Does Not Involve Contracts.

Section 1981 protects the right to "make and enforce contracts," and there is no indication that Congress intended the term "contract" to carry any meaning other than its "ordinary" meaning.[3] *Bampoe*, 93 F. Supp. 2d at 375 (citation omitted); 42 U.S.C. § 1981(a).  For the statute to apply, Plaintiffs must prove the interaction at issue constitutes an enforceable contract under ordinary contract formation principles:  "offer, acceptance ..., consideration, mutual assent, and an intent to be bound."  *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021) (citation omitted).

Plaintiffs propose two candidate "contracts" in an attempt to bring Defendants' speech within the statute's ambit.  *First*, Plaintiffs propose that the relationship between Defendants and the doctors Defendants add to the curated listing is contractual (and that Defendants denied Dr. Morrell the opportunity to enter such a contract).  Compl. ¶¶ 37–38.  This theory fails because Plaintiffs fail to plead mutual consideration between Defendants and the listed doctors.  *Second*, Plaintiffs propose that Defendants' directory serves as a "conduit" to future contracts between Dr. Morrell and hypothetical patients.  *Id.* ¶ 47.  This theory fails because, as a matter of law, a curated directory on a website is not a "conduit" to future contracts.

### A.  Defendants Do Not Enter Contracts with the Listed Doctors.

The relationship between Defendants and the doctors listed on the website is not contractual.  "To establish an enforceable contract under New York law, there must be an offer,

---

[3] For completeness, Section 1981 also protects the right "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property," none of which are at issue here.  42 U.S.C. § 1981.

acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Annabi v. New York Univ.*, No. 22-CV-3795, 2023 WL 6393422, at *3, *6 (S.D.N.Y. Sept. 29, 2023) (cleaned up). Here, essential elements necessary to create a contract are missing.

Consideration is a necessary ingredient for an enforceable contract. *See Lamda Sols. Corp.*, 574 F. Supp. 3d at 213 (a complaint fails to sufficiently plead the existence of a contract absent factual allegations regarding its formation). Consideration "consists of either a benefit to the promisor or a detriment to the promisee"—that is, some right, interest, profit, or benefit accruing to one party or some forbearance, detriment, loss, or responsibility undertaken by the other. *Lebedev v. Blavatnik*, 193 A.D.3d 175, 183 (1st Dep't 2021) (citation omitted). In short, consideration requires a bargained-for exchange of promises or performance.

Defendants operate the index with complete discretion to add or remove listings to promote their "vital" interest in championing "access, education, and resources to improve health outcomes." Defendants owe ***nothing*** to the doctors they feature, who owe nothing in return. Plaintiffs' analogy to *Fearless Fund*—where applicants contractually bound themselves to contest rules and gave away meaningful publicity rights in exchange for the ***promise*** of a cash prize—only underscores how different these facts are. Compl. ¶ 46 (citing *American Alliance for Equal Rights v. Fearless Fund Mgmt. LLC*, 103 F.4th 765, 775 (11th Cir. 2024)). Defendants are not contracting with ***any*** doctors, and Section 1981 does not reach these facts.

### i. *Defendants' Choice to Feature a Doctor in the Curated Listing Does Not Create a Contract.*

Defendants make no enforceable promise to ***any*** doctor, regardless of race. Appearing on a website's index is not a contractual relationship, and Section 1981 does not reach this conduct.

A party must make specific promises about the nature and extent of performance for a contract to form. "Where a promisor retains an unlimited right to decide later the nature or extent

6

of his performance, the promise is too indefinite for legal enforcement." *Chiapparelli v. Baker. Kellogg & Co.*, 252 N.Y. 192, 200 (1929); *Jackson v. Wells Fargo Home Mortg.*, No. 15-CV-5062, 2018 WL 8369422, at \*10 (E.D.N.Y. Aug. 10, 2018), *report and recommendation adopted*, No. 15-CV-5062, 2019 WL 1376840 (E.D.N.Y. Mar. 27, 2019), *aff'd*, 811 F. App'x 27 (2d Cir. 2020) (quoting *Chiapparelli*, 252 N.Y. at 200). "When provisions of supposed promise leave promisor's performance optional or entirely within discretion, pleasure and control of promisor, the promise is illusory." *Klauber Bros. v. Westchester Lace Inc.*, No. 87 CIV. 7370, 1989 WL 31679, at \*3 (S.D.N.Y. Mar. 30, 1989). And relatedly, there can be no "mutual assent" (i.e., "meeting of the minds") when an alleged promisor's statements are "so general as to be unenforceable" because "they do not indicate what kinds of benefits would be available [or] for how long [the alleged promisor] was obligated to provide benefits." *See Annabi*, 2023 WL 6393422, at \*6, \*9 (granting motion to dismiss); *see also Cheves v. Trs. of Columbia Univ.*, 931 N.Y.S.2d 877, 877 (1st Dep't 2011); Restatement (Second) of Contracts § 33 (Am. L. Inst. 1981) (terms of an agreement must be "reasonably certain" to be enforceable).

As a matter of law, the facts pled are insufficient for contract formation. The Complaint cites the following (and nothing further) to support the existence of consideration: "The directory [] grants doctors access to a potentially lucrative revenue stream in exchange for accepting various terms." Compl. ¶ 46. Yet the Complaint never alleges that Defendants make any promises regarding the nature or duration of the directory listings they "grant[]" to doctors. *Id*. Similarly, the Complaint never alleges that listed doctors understood the listing to come with any such promises. And the documents which Plaintiffs incorporate into their Complaint make it clear that after "grant[ing]" doctors a place on the listing, Defendants may "remove the profile at any time." *See* Web Form. Defendants have an "unlimited right" to remove listings. *See Chiapparelli*, 252

7

N.Y. at 200. It is "entirely within [Defendants'] discretion, pleasure and control" to choose the manner and duration of those listings. *See Klauber Bros.*, 1989 WL 31679, at *3. And when Defendants choose to include a doctor on the listing, they do so without indicating for how long they would provide this benefit. *Cf. Annabi*, 2023 WL 6393422, at *9. For the same reasons as in these cases, there are no contracts pled here.

### ii. Physicians Do Not Provide Consideration to Defendants in Exchange for Listing.

Equally fatal to Plaintiffs' contract theory, the doctors promise nothing to Defendants—an independent reason that the relationship is not contractual. Consideration must be mutual and bargained for. *See Annabi*, 2023 WL 6393422, at *6 ("For consideration to be valid, it must be 'bargained for,' meaning that the promisor must seek it in exchange for his promise, and the promisee must give it in exchange for that promise."). Defendants do not run a for-profit advertising service where doctors pay a fee in exchange for a listing. Rather, Defendants provide free advocacy to support an outcome "vital" to them. Compl. ¶ 24.

The Complaint states that doctors receive a listing "in exchange for accepting various terms, including the obligation to maintain high-quality, personally verified listings." However, Plaintiffs' conclusory allegation that doctors make promises "in exchange" for the listing is not borne out by the facts Plaintiffs plead.[4]

### a. Vague Responsibilities Buried in the Terms of Service Cannot Serve as Consideration for the Listings.

The statement that listed doctors accept a "responsibility" to keep their listings accurate does not establish a contractual obligation. Compl. ¶ 20. As a matter of law, that term is

---

[4] Even at the motion to dismiss stage, a complaint's legal conclusions are not subject to deference. *Van Bortel v. Ford Motor Co.*, 621 F. Supp. 3d 380, 385 (W.D.N.Y. 2022) ("The court need not accept conclusory allegations or draw unreasonable inferences").

unenforceable because: (1) the listed doctors never agreed to it, and (2) it is too vague to be contractually binding.

Listed doctors did not agree to this term because it appears only in a "browsewrap" terms of use, and Plaintiffs allege no elements that would render such a browsewrap enforceable in contract. *See Carter v. Ralph Lauren Corp.*, 683 F. Supp. 3d 400, 413–14 (S.D.N.Y. 2023) (dismissing claim where terms and conditions were not "presented in a clear and conspicuous way"); *see also Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010) (affirming denial of motion to dismiss where defendant failed to allege facts showing that "a user would have had actual or constructive knowledge of the [t]erms").

Here, Plaintiffs do not even ***allege*** that doctors "accept[ed] the Terms and Conditions merely by using the website," *cf. Hines*, 380 F. App'x at 25 (holding mere use of website insufficient) or that doctors "take[] some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance[]" *cf. id.* (noting that a contract could be formed if "the terms of the agreement were prominently displayed on the program user's computer screen" and the "user was required to indicate assent to the agreement by clicking on the 'I agree' icon before proceeding") (cleaned up). Because Plaintiffs do not allege that the Terms of Use were conspicuous, that listed doctors had actual knowledge of those terms, or that Plaintiffs had to "accept" those terms before submitting their information, they fail to show that a binding and enforceable contract existed. *Id.*

And regardless, this term of use would be unenforceable. The site provides no specifics on the nature of this so-called responsibility to ensure accuracy. *See* Terms of Use. Moreover, the terms are internally inconsistent as to who holds the responsibility. *Compare id.* ("**It is the user's responsibility to verify**") *with id.* ("It is [the Health Professionals] responsibility to keep …

9

accurate") *with id.* ("The information and web links will be reviewed and checked [by Defendants]"). Similarly, the Terms of Use explicitly explain to "Health Professionals" that visitors to the site are expected to "use the materials on this site as reference only." *Id.* And the only penalty for inaccurate information is delisting from the website—a "penalty" Defendants could already impose for *any* reason, at any time. Compl. ¶ 20. Taken together, it is clear that no party is expected to have an enforceable obligation to ensure accuracy, and the Terms of Use highlight that Defendants offer no guarantee of accurate listings. Any alleged promise from the physicians is hollow. *See Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc.*, No. 21-CV-5749, 2023 WL 7222736, at *6, *7 (E.D.N.Y. Nov. 2, 2023) (finding no unilateral contract was formed where: there was no guarantee that plaintiff's application would be accepted, plaintiff "never agreed to a set of terms and conditions," and defendants "allowed for unilateral cancellation"); *see also Annabi*, 2023 WL 6393422, at *9; *Klauber Bros.*, 1989 WL 31679, at *3.

   b.  *The Listed Doctors' Consent to Share Data Is Not Made in Exchange for the Listing.*

The only other "promises" Plaintiffs allege in the Complaint are ***not made in exchange*** for a listing. *Id.* ¶ 18. A voluntary surrender of one's own information, absent any bargained-for return promise, is legally a gift, not consideration for a contract. *Van Bortel*, 621 F. Supp. 3d at 387–88 (dismissing breach of contract claim).

Plaintiffs allege that doctors "consent to have their information listed" and "relinquish control over their data." Compl. ¶¶ 19–20. But that consent occurs the moment a doctor clicks the "Submit" button on the website ("Signature—I … consent to have my information listed"). Web Form; *see also* Privacy Policy ("If you ***choose*** to post information through our website(s) … we may retain such information also.") (emphasis added). Plaintiffs admit that the alleged contract is not formed at the time a doctor clicks "Submit." Compl. ¶¶ 37–38 (discussing constructive rejection of contractual offer); *see also* Privacy Policy. And any later "promise" made by

10

Defendants would be "unsupported by consideration of any kind." *See Van Bortel*, 621 F. Supp. 3d at 388. A doctor who chooses to "relinquish" control of her information does so independently of any later promise (however illusory) by Defendants to provide listing services. *Id.* at 387–88 (plaintiff's agreement to keep defendant's data confidential was made independently of, and not in exchange for, any promise by defendant).

> c. *The Terms of Use Are Made in Exchange for Accessing the Website, Not in Exchange for the Listing.*

Plaintiffs also allege that doctors agree to "hold harmless" the website and submit to certain "legal jurisdiction and venues." Compl. ¶ 18. But those agreements are simply a condition of accessing the "information services provided by Find A Black Doctor at no charge to users of the World Wide Web." *See* Terms of Use. Even assuming that those terms are enforceable,[5] they are entered into in exchange for **visiting** the website. And the Complaint makes no allegation that Defendants grant access to their website based on race. Rather, Dr. Morrell himself was able to access the website and is bound by the Terms of Use to the same extent as any other visitor. Compl. ¶ 36. The allegations in Paragraph 18 of the Complaint are irrelevant to the issues of this dispute.

### iii. Plaintiffs' Analogies to Fearless Fund and Founders First Fail.

Unlike the grant funding in *American Alliance for Equal Rights v. Fearless Fund Mgmt, LLC*, 103 F.4th 765, 769–70 (11th Cir. 2024) and the accelerator admission program in *American Alliance for Equal Rights v. Founders First Cmty. Dev. Corp.*, No. 4:24-cv-00327, 2024 WL 3625684 (N.D. Tex. July 31, 2024)—both of which exchanged direct, tangible economic benefits for defined obligations—a free directory listing with no guaranteed benefits offers no concrete, bargained-for consideration. *Fearless Fund* had clear consideration on both sides. There, the

---

[5] As discussed above, the Complaint fails to plead that the Terms of Use or Privacy Policy are binding on website visitors.

11

defendant promised four winners "$20,000 apiece and digital tools to assist with business growth, as well as mentorship," and in exchange obtained rights to use the contestants' entries and to use their name, image, and likeness for promotional purposes. *Fearless Fund*, 103 F.4th at 769–70. Contestants released and indemnified the defendant and agreed to arbitrate disputes, and the defendant expressly referred to the arrangement ***as a contract***. *Id.* at 770.

Two key differences separate *Fearless Fund* from the Complaint here. *First*, the grant money, digital tools, and mentorship were clear, enforceable, and binding promises. *Id.* at 769– 70. Unlike Defendants here, the *Fearless Fund* defendant could not withdraw funding or mentorship at will. *Id.* *Second*, only a "winning entrant" granted publicity rights and only "in return" for "20,000 and valuable mentorship." *Id.* at 775. Applicants did not surrender publicity rights unilaterally by clicking submit with no promise of anything in return.

*Founders First* likewise involved clear consideration: a grant of "$50,000 per annual grant cycle to ten Texas small businesses operating under a business-to-business or business-to-government model," which the defendant did not dispute was a contract. 2024 WL 3625684, at *1, *3.

### B. Plaintiffs' Section 1981 Claim for Interference with Prospective Third-Party Contract Also Fails.

Perhaps recognizing the weakness of their primary allegation that Defendants contract with physicians for listing services, Plaintiffs provide a fallback argument that Defendants are interfering with the potential contracts between Dr. Morrell and hypothetical future patients. Compl. ¶ 47 (the "conduit" theory). To make this argument, Plaintiffs liken Defendants' website to a trade union. *Id.* (citing *Daniels v. Pipefitters' Ass'n Loc. Union No. 597*, 945 F.2d 906 (7th Cir. 1991)). As a matter of law, this analogy fails. Defendants' web directory "bears an attenuated

12

[and] haphazard connection" to Dr. Morrell's patient prospects and is not a "necessary intermediary and conduit" for Dr. Morrell to reach patients. *Daniels*, 945 F.2d at 915.

At the threshold, Plaintiffs' conduit theory fails because the Complaint fails to identify "particular" contracts affected by Defendants' actions. The law requires Plaintiffs to plead the "particular … third party" that it would have contracted with absent Defendants' actions. *See Ginx*, 720 F. Supp. 2d at 358, 360 (dismissing plaintiffs' § 1981 claim). As in *Ginx*, Plaintiffs merely make "vague and conclusory allegation[s] [that are] insufficient to state a deprivation of the right to make and enforce contracts that is protected by Section 1981." *Id.* at 361 (cleaned up); *see also Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 477 (S.D.N.Y. 2013) (dismissing complaint that "failed to identify specific contracts with identified customers"). Plaintiffs' generic allegation that the website is a "conduit connecting" unnamed and hypothetical patients to doctors is insufficient. Compl. ¶ 47.

Substantively, courts within the Second Circuit have made clear that "liability under [Section] 1981 for interference with a third-party contract attaches only to persons who actually had the power or authority to prevent the plaintiffs from contracting with the third party." *See Ginx*, 720 F. Supp. 2d at 358; *see also Robledo*, 965 F. Supp. 2d at 477 (observing that "Section 1981 protects against the interference with a third-party contract, but liability only attaches to persons who actually had the power or authority to prevent the plaintiff from entering into a contract with the third party"). Thus, to plausibly allege a Section 1981 claim capable of withstanding Defendants' motion to dismiss, Plaintiffs must demonstrate that Defendants both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties and that the party actually exercised that authority to the individual's

13

detriment.  *Ginx*, 720 F. Supp. 2d at 358 (citing *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002)).

Here, Plaintiffs allege that their exclusion from the directory is actionable under Section 1981 because Defendants are "an intermediary and conduit" that "interferes to intentionally deprive certain doctors of the opportunity to enter into contracts with patients."  Compl. ¶ 47 (cleaned up).  Plaintiffs' Complaint fails for the reasons set out in *Ginx*.  There, this Court dismissed a Section 1981 claim where plaintiffs alleged that defendant community leaders "prevented [plaintiffs] from entering into contracts to provide" services "to the persons who would have been patrons of [plaintiffs' restaurant]," in effect, "with the general public" due to racial animus.  *Ginx*, 720 F. Supp. 2d at 358.  This Court reasoned that plaintiffs' Section 1981 claim failed given that a judge, not defendants, held the power required to prevent plaintiffs' restaurant from opening for business and obtaining a liquor license.  *Id.*  "Absent that judge's decision, no power on earth—certainly nothing [defendants] had any ability to do—could have prevented [plaintiffs' restaurant] from opening its doors with a liquor license."  *Id.* at 360.  As in *Ginx*, Defendants neither possess the power nor the authority to prevent Plaintiffs from entering into contracts with prospective third-party patients.

Even the judicial opinion Plaintiffs chose to cite in their Complaint, *Daniels*, shows that Plaintiffs' conduit argument fails as a matter of law.  The court in *Daniels* stressed the distinction between listings that "bear[] an attenuated or haphazard connection to contracting," such as "the want ads section of a newspaper," on the one hand, with a union referral service that was a "necessary intermediary and conduit connecting job opportunities to job referrals[,]" on the other hand.  *Daniels*, 945 F.2d at 914–15.  Only the latter can support a conduit theory under Section 1981.  Defendants' website is indisputably more like "the want ads" section of a newspaper than

14

it is like a trade union.  Regardless, Plaintiffs do not allege that a listing on Defendants' directory is an "indispensable step" in a doctor's efforts to reach patients, warranting dismissal of their claim. *Id.* at 914.  Rather, Plaintiffs concede that Dr. Morrell maintains an active medical practice in which he "serves patients of all races, including black patients[,]" ***even though*** he is not listed on the directory.  Compl. ¶ 10.  Thus, unlike in *Daniels*, Plaintiffs' claim fails.

## II.    Plaintiffs' Section 1981 Claim Should Be Dismissed Because the First Amendment Protects Defendants' Expression.

Find A Black Doctor is not a commercial directory.  It is a curated editorial directory. Plaintiffs do not dispute this fact.  Their own Complaint recites the directory's mission, its editorial selection process, and its advocacy for health care that will meet the needs of Black patients in immense detail.  *Id.* ¶¶ 15–27.

Plaintiffs ask this Court to order the directory to include Dr. Morrell, a white physician who does not further the directory's message, and to prohibit Dr. Strachan from considering race when deciding whom to feature.  *See generally* Compl.  Just as the distinction between a commercial and editorially curated directory makes clear that Section 1981 is inapplicable, it also makes clear that Plaintiffs' demands would impinge Defendants' First Amendment-protected activity.  The directory's selection of which physicians to feature is protected editorial curation. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024).  Plaintiffs' own allegations establish the defense as a matter of law and, thus, warrant dismissal with prejudice.

### A.  Choosing Information to Include and Exclude from the Find A Black Doctor Directory Is Protected Editorial Curation Under the First Amendment.

The First Amendment protects an editor's exercise of judgment over what material to include or exclude from a directory.  "An entity 'exercis[ing] editorial discretion in the selection and presentation' of content is 'engage[d] in speech activity.'"  *Cf. Moody*, 603 U.S. at 731 (quoting *Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1988)).  Dr. Strachan's

15

decision about which physicians to feature on the Find A Black Doctor directory is precisely this kind of protected editorial judgment.

Courts in the Second Circuit have previously addressed the issue of editorial curation in the context of Section 1981 cases. A particularly relevant decision is *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014), which granted defendant's motion for judgment on the pleadings regarding plaintiffs' Section 1981, 1983, and 1985 claims that defendant Chinese company Baidu, which operated a search engine, unlawfully blocked information about China's democracy movement from search results in the United States. *Baidu*, 10 F. Supp. 3d at 435. The court in *Baidu* held that the First Amendment protected Baidu because plaintiffs' own complaint alleged that Baidu "exercise[d] editorial control over its search results" by limiting certain political topics. *Id.* at 439–40. The *Baidu* plaintiffs' own allegations ruled out the possibility that Baidu was simply "'infrastructure or [a] platform that deliver[ed] content' in a neutral way[,]" undeserving of protection under the First Amendment. *Id.* at 440. The court dismissed the case because "[t]o allow such a suit to proceed would plainly violate the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Id.* at 440.

Principles considered in *Baidu* are also relevant here. The purpose of the Find A Black Doctor directory is "to retrieve relevant information from the vast universe of data on the Internet and to organize it in a way that would be most helpful to the searcher." *Id.* at 438. Indeed, the case here is even stronger than in *Baidu*, where the editorial control was modulated by "algorithmic" decision-making—which is not at issue here, per Plaintiffs' own allegations. *Compare Baidu*, 10 F. Supp. 3d at 438, *with*, Compl. Moreover, in *Baidu*, the court considered that the compilation of information was not "related *solely* to the economic interests of the speaker

16

and its audience." *Baidu*, 10 F. Supp. 3d at 443 (emphasis in original).  Here there is ***no*** allegation that Defendants have economic interest in the Find A Black Doctor directory.  Defendants provide listings as a revocable, noncontractual gift to doctors, reflecting the mission-driven and expressive nature of the activity.  Plaintiffs admit as much—the Complaint includes ***no*** allegations that Defendants profit from the directory or receive ***any*** economic benefit from it.  To the contrary, the Complaint explicitly asserts that the editorial decisions are in service of Defendants' goals in operating the website.  Compl. ¶ 24 (citing Defendants' "belie[f] this exclusion is vital.").  Finally, and like *Baidu*, Defendants do not have the "power to silence anyone's voices." *Baidu*, 10 F. Supp. 3d at 441.  After all, Defendants' decision not to list Dr. Morrell on the directory could not possibly silence him—it could not prevent him from marketing himself on any other internet forum, from finding patients through any other means, or from entering into contracts with patients he markets himself to.  Thus, as in *Baidu*, Defendants' Motion should be granted because Defendants' right to editorially curate the content of the directory is protected activity under the First Amendment.

### B.  The Expressive Intent of the Find A Black Doctor Index Further Supports the Noncontractual Nature of the Listings.

Philanthropic transactions and activities are distinct from business transactions.  *See, e.g.*, *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 787–88 (1988); *cf. Ams. For Prosperity Found. v. Bonta*, 594 U.S. 595, 606–15 (2021); *Runyon v. McCrary*, 427 U.S. 160, 168 (1976) (emphasizing that the schools in question were "commercially operated").  Under these precedents, the conduct at issue in this case—creating a curated list of doctors, at no charge to those doctors or their patients, to "improve health outcomes particularly in the African American community"—is expressive conduct.  Defendants' charitable intent in operating the Find A Black Doctor directory is clear, and the First Amendment and the ordinary principles of contract law are aligned in considering

17

the relevance of this intent.  Plaintiffs' allegations are only the most tenuous and minimal alleged

indicia of contract.  *See supra*, at pp. 7–10.  This clearly cannot transform Defendants' expressive

intent in curating its listing into a contract.  Defendants convey gifts.  They do not create contracts.

### III.     Plaintiffs Should Be Denied Leave to Amend.

Leave to amend is not automatic.  Although Federal Rule of Civil Procedure 15(a)(2)

instructs courts to grant leave to amend "freely ... when justice so requires," a court must deny

amendment where it would be futile, meaning it "would fail to cure prior deficiencies or to state a

claim under Rule 12(b)(6)."  *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236,

252 (2d Cir. 2017) (cleaned up).  Where, as here, the deficiency is substantive rather than a matter

of pleading, dismissal should be with prejudice.  *Owoyemi v. Credit Corp. Sols. Inc.*, 596 F. Supp.

3d 514, 521 (S.D.N.Y. 2022).

In their Complaint, Plaintiffs did not simply fail to plead the necessary elements to establish

a contract.  They affirmatively incorporated portions of the Find A Black Doctor website into the

complaint, and those terms establish at least that:  (1) Defendants retain the unlimited right to

remove listings, making the listings gifts rather than enforceable contracts, and (2) Defendants

curate the listings according to their allegedly "vital" mission-driven and expressive intent, making

that curation protected under the First Amendment.  By establishing these facts, Plaintiffs have

shown they will never be able to state a Section 1981 claim.

Because Plaintiffs cannot state a Section 1981 claim and any amendment would be futile,

the Court should dismiss this action with prejudice.  *Owoyemi*, 596 F. Supp. 3d at 521 (dismissing

claims with prejudice); *Spain v. Ball*, 928 F.2d 61, 62 (2d Cir. 1991) (affirming dismissal of

complaint and reversing grant of leave to amend).

## CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Dated: August 3, 2026

Respectfully submitted,

/s/ LaRue L. Robinson
LaRue L. Robinson (lrobinson@willkie.com)*
Henry C. Thomas (hthomas@willkie.com)*
Zakiyah Dillard (zdillard@willkie.com)*
Chloe Smeltzer (csmeltzer@willkie.com)*
Kenedi McCormick (kmccormick@willkie.com)*
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle Dr.
Chicago, IL 60654-3406
Tel:  (312) 728-9000

Andrew Lichtman (alichtman@willkie.com)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, NY 10019-6099
Tel:  (212) 728-8000

ReNika Moore (rmoore@aclu.org)
Sarah Hinger (shinger@aclu.org)
Leah Watson (lwatson@aclu.org)**
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
Tel:  (212) 549-2500

*Admitted *pro hac vice*
** Motion for admission *pro hac vice* pending

*Counsel for Defendants DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 3, 2026, I caused the foregoing memorandum to be filed electronically with the Clerk of the Court for the Southern District of New York by using the CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: August 3, 2026

<u>*/s/ LaRue L. Robinson*</u>
LaRue L. Robinson (lrobinson@willkie.com)*
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle Dr.
Chicago, IL 60654-3406
Tel:  (312) 728-9000

*Admitted *pro hac vice*

*Counsel for Defendants DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN*

20

## **LOCAL RULE 7.1(C) CERTIFICATION**

I, LaRue L. Robinson, hereby certify that the foregoing memorandum of law complies with

the word count limitations set forth in Rule 7.1(c) of the Local Rules of the United States District

Court for the Southern District of New York, and contains 6,724 words, exclusive of the caption,

table of contents, table of authorities, signature blocks, certificate of service, and this certificate.

Dated: August 3, 2026

*/s/ LaRue L. Robinson*
LaRue L. Robinson (lrobinson@willkie.com)*
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle Dr.
Chicago, IL 60654-3406
Tel:  (312) 728-9000

*Admitted pro hac vice

*Counsel for Defendants DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN*

21