**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DO NO HARM and DR. TRAVIS MORRELL,<br><br>*Plaintiffs*,<br><br>v.<br><br>DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN<br><br>*Defendants*. | Case No. 1:26-cv-04152 |

**AMENDED COMPLAINT**

1. Doctors, who are entrusted to care for people at their most vulnerable, should know this best: "Racial discrimination is invidious in all contexts." *SFFA v. Harvard*, 600 U.S. 181, 214 (2023) (cleaned up). It "demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220 (cleaned up).

2. But Find A Black Doctor, an online directory for physicians and dentists, openly discriminates against doctors by race. *See, e.g.*, Find A Black Doctor, *Why You Should Look For "A Black Primary Care Doctor Near Me"*, perma.cc/GVV4-437A (archived Apr. 3, 2026). The directory limits eligibility to "black physicians and dentists in active clinical practice." Find A Black Doctor, *About Us*, perma.cc/LJ5K-LD4W (archived Apr. 3, 2026).

3. The directory is unlawful. And for Dr. Dina Strachan—the dermatologist who founded and operates the directory—it is a violation of ethical obligations. Under New York law it is "professional misconduct" for a doctor to refuse to "provide professional service to a person because of such person's race." N.Y. Educ. Law §6530(10). But the directory excludes all non-black doctors from its services.

4. The directory's race-based exclusion of non-black doctors is illegal. *See, e.g.*, *Nat'l Org. for Women v. State Div. of Hum. Rts.*, 314 N.E.2d 867, 871 (N.Y. 1974) (jobs columns in newspaper separated by sex were discriminatory). As relevant here, the directory is a contract. Doctors receive valuable advertising exposure to, and potential opportunities to work with, new patients. In exchange, the directory makes doctors agree to various terms—including holding the website harmless for various grievances—and it extracts permission to use the doctors' personal information on its listings, which gives them their commercial value. *See About Us*; Find A Black Doctor, *Terms of Use*, perma.cc/T9D2-PAT8 (archived May 3, 2026).

5. The directory's race-based exclusion of non-black doctors violates many laws—most notably 42 U.S.C. §1981, the landmark federal statute that bans racial discrimination in contracting.

6. Do No Harm has members, including Dr. Travis Morrell, who are victims of Defendants' race discrimination. Do No Harm and Dr. Morrell are entitled to relief.

## PARTIES

7. Plaintiff Do No Harm is a nationwide, grassroots, 501(c)(3) membership organization. Its more than 50,000 members include healthcare professionals, students, patients, and policymakers. DNH's mission is to ensure that medicine is driven by scientific evidence rather than ideology. Dr. Travis Morrell is a member of DNH.

8. DNH is a genuine, voluntary membership association. Its mission and outreach are highly public and detailed on its public-facing website. Members voluntarily join and receive regular communications about the association's litigation and other activities. DNH has represented the interests of many of its members in several federal cases. It brings this lawsuit in a representational capacity on behalf of its members who would have standing to sue on their own.

9. Plaintiff Dr. Travis Morrell is a licensed physician and double board-certified dermatologist and dermatopathologist. He also has a Master of Public Health degree. Dr. Morrell's medical practice focuses on the diagnosis and treatment of serious skin conditions, including melanoma, carcinoma, autoimmune disease, and cutaneous effects of systemic disorders. Dr. Morrell serves patients of all races, including black patients.

10. Defendant DRDINAMD LLC is a New York-based limited liability corporation. It "produce[s]" the findablackdoctor.com databases. *See Terms of Use*. It is headquartered in New York.

11. Defendant Dr. Dina D. Strachan is a board-certified dermatologist. She founded the Find A Black Doctor directory and continues to oversee its operation. *See* Find A Black Doctor, *Media*, perma.cc/EL7B-9CUP (archived May 3, 2026); BlackNews.com, *'Find A Black Doctor' Online Directory Now Lists Health Professionals in All 50 States*, perma.cc/V5RX-U6SV (archived May 3, 2026).

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. §1331.

13. Venue is proper in this district under 28 U.S.C. §1391 because all Defendants reside in this State, at least one Defendant resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## BACKGROUND

### A. Find A Black Doctor operates a directory of active physicians.

14. Find A Black Doctor is an internet directory of physicians in active clinical practice.

15. The directory lists many different types of physicians, including primary-care physicians. Primary-care physicians "act as the first point of contact for patients and coordinate their healthcare needs, referring them to specialists when necessary." *Why You Should Look*. They also provide a variety of important services, including "preventive care, routine check-ups, management of chronic conditions, and treatment of acute illnesses." *Id.*

16. The homepage of the website conspicuously invites doctors to "List Your Practice." Under the "List Your Practice" tab, Defendants tell doctors to "[m]ake yourself available to the many patients looking for a doctor just like you!" *How To List Your Practice*, perma.cc/DV8N-EKSW (archived Apr. 4, 2026).

17. To apply to have their business listed on the directory, doctors must click the "Sign Up" button, complete an online form, and provide information, including their name, address, education, the methods of payment they accept, and whether their business is black owned. *See* Find A Black Doctor, perma.cc/N6QZ-2XDY (archived Apr. 4, 2026).

18. The directory, in turn, represents that an accepted applicant will receive a standardized physician profile available through its public directory. The profile will include, among other things, the physician's biography, credentials, contact information, NPI link, website and social-media links, placement in as many as three specialty categories, and up to three mapped office locations. *See How to List Your Practice*.

19. The directory is contractual in nature.

20. Defendants receive commercial benefits from obtaining from doctors' information about their practice and then listing those doctors and their practices on the directory. Defendants gain Internet attention and traffic, which, in turn, can be commercialized. The directory also attracts advertisers and sponsors. As the Terms of Use Agreement for www.findablackdoctor.com explains, the directory is "funded" by "advertisers and sponsors," among others. *See Terms of Use*. The doctors' content,

permissions, certifications, and upkeep supply the value that Defendants solicit and use to operate, promote, and fund their online operations.

21. The directory is also beneficial for the listed doctors. By being listed on the directory, doctors gain a valuable opportunity to market themselves and their practice to new patients. Indeed, Defendants tell doctors that getting listed can help them "[g]row [their] practice" and "[g]row [their] brand." *How to List Your Practice*.

22. In exchange for the opportunity to be listed, doctors must click the tab "List Your Practice," click the "Sign Up" button, and fill out a form that elicits information about their practice. Doctors must also "consent to have [their] information listed" on the directory and "represent that the information submitted is correct." *See* Find A Black Doctor, perma.cc/N6QZ-2XDY (archived Apr. 4, 2026).

23. The doctors also must give up certain additional rights and agree to certain additional obligations. A link to the Terms of Use Agreement is conspicuously at the bottom of each webpage, including the main webpage, "How to List Your Practice: Doctor Sign Up" page, and the sample doctor listing.

24. The Terms of Use Agreement states that www.findablackdoctor.com is an information service provided under "the express condition that th[e] users agree to be bound by the terms and conditions set forth in th[e] Terms of Use Agreement."

25. Listed doctors are covered by the Terms of Use Agreement, which has a section for "Health Professionals." The Terms of Use Agreement obligates doctors to

"keep [their] personal information and web links accurate, updated and complete," among other duties.

26. The imposition of this duty to keep accurate information is valuable to the directory because having accurate information increases the directory's value, whereas having inaccurate information decreases it. As Defendants explain, having accurate profiles means that patients do not become "frustrated having to sort through a high number of unhelpful profiles of doctors who never intended to be listed in the first place." *About Us*. The directory markets its listings as a uniquely "high quality" catalogue that avoids the problems with "incorrect or stale" information that can plague other directories. *Id.* To that end, the directory enforces the Terms of Use Agreement by "review[ing] and check[ing]" the "information and web links" on the physicians' pages "for accuracy, authenticity, and completeness." *Terms of Use*. The directory will "de-activate and/or discontinue" the pages of any physicians who fail to discharge their obligations. *Id.*

27. Doctors also agree to "hold harmless Find A Black Doctor" from claims arising out of their use of the website—including claims related to "intellectual property rights"—and they agree to the "exclusive legal jurisdiction and venues of the Courts of Nassau County, New York, and the United States District Court of the Southern District of New York with respect to" matters relating to use of the website. *See Terms of Use*.

28. Doctors likewise promise to allow the directory to "retain" any "information" disclosed by them. *See* Find A Black Doctor, *Privacy Policy*, perma.cc/VQC5-5LRT (archived May 9, 2026).

29. In return, Defendants agree to "set up a profile so patients can get great care." *How to List Your Practice*. The directory accepts an applicant into the listing arrangement by creating and publishing the applicant's profile. The directory commits to hosting the profile and making it available through the directory's specialty- and location-based search functions. Updating and maintaining this online directory requires money and labor.

30. Despite extracting promises from doctors in exchange for listing them on the directory—and then relying on the doctors to fund the directory—the relationship between listed doctors and Find A Black Doctor is purely contractual and commercial. Listed physicians do not become members of Find A Black Doctor. They do not speak on the directory's behalf. The directory does not coordinate their advocacy, medical practices, patient relationships, or communications. Nor do they assent to any shared message with the directory or with each other.

### B. Find A Black Doctor excludes doctors from its directory based on race.

31. True to its name, Find A Black Doctor does not allow all qualified doctors to list their practices, even if those doctors treat many or mostly black patients. Only

"black physicians and dentists" are eligible. *About Us*. Other races cannot be listed or meaningfully apply.

32. This racial discrimination is intentional. Indeed, the directory's website explains that the idea for the directory came out of dissatisfaction with an earlier website "that wasn't specifically racially targeted." *Id.* The directory sought to change that by refusing to contract with non-black doctors.

33. Defendants' refusal to contract with non-black doctors is based on race, not viewpoint. The directory does not even purport to bar or limit physicians based on their viewpoint (that is, whether they support or oppose racial concordance). And in its eligibility criteria and sign-up forms, the directory never asks whether applicants share any views. Instead, it asks whether the doctor is black (or whether his practice is black-owned).

34. Moreover, the directory's public materials characterize the directory as "merely" an "information service"—not an expressive association—while expressly disclaiming that it recommends or endorses the doctors whose information it publishes. *See Terms of Use*; *Media*.

35. The directory's listings are not curated. Defendants do not author, customize, or editorially shape the individual listings. Indeed, the directory explicitly distinguishes between the listings, which are "created by the doctors themselves," and "articles, blog posts, and other content," which are "curated to educate … visitors." *About Us*. The directory also denies editorial oversight of the listings, explaining it

"merely provides names, contact information, and a description of services provided." *Terms of Use*; *How To List Your Practice*.

### C. Find A Black Doctor's discriminatory listing requirements injure members of Do No Harm, including Dr. Travis Morrell.

36. Do No Harm has members who were and are harmed by the directory's racial discrimination.

37. One such member is Dr. Travis Morrell, a board-certified dermatologist and dermatopathologist. He satisfies the race-neutral eligibility criteria because he is "active clinically" and "board-certified in [his] field of clinical practice." *See How To List Your Practice*.

38. But Dr. Morrell is not black. He is white. And his practice is not black-owned.

39. Dr. Morrell treats patients of all races, and he has treated many black patients and continues to do so. He is a dermatologist, a specialty that the directory says is especially important for black patients. He is an expert in skin cancers, including cutaneous T-cell lymphoma and dermatofibrosarcoma protuberans, which the directory explicitly recognizes as presenting particularly acute risks for black patients. *See* Find A Black Doctor, *Skin Cancer in Blacks*, perma.cc/SG87-SBJ2 (archived Apr. 3, 2026).

40. Dr. Morrell wants to use his expertise to better the lives of his patients, and he wants patients to be able to find him to receive healing. He sincerely wants to be listed on the directory.

41. Adding Dr. Morrell—who operates out of Grand Junction, Colorado—to the directory would be a major benefit. The directory lists only three doctors in all of Colorado. It lists no doctors in Grand Junction. And it lists no dermatologists in the entire State.

42. After familiarizing himself with the Terms of Use Agreement, the Privacy Policy, and various other informational pages on the website to understand his obligations, Dr. Morrell applied to be listed on the directory on December 23, 2025.

43. Dr. Morrell understood that by signing up to be listed on the Find A Black Doctor directory, he was "signif[ying] [his] consent to the terms and conditions." *See Terms of Use*; *see also id.* ("By using our site, you consent to the agreement.").

44. For months he heard nothing. On February 23 he followed up by sending an email asking for an update on his application. But he once again encountered only silence. Consistent with the directory's blacks-only criterion, Dr. Morrell's application was not accepted.

45. After waiting for nearly eight months and having multiple communications ignored, Dr. Morrell understands his application to have been constructively rejected because he is white. *Cf. Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 198-200 (5th Cir. 2000); *Schroeder v. Chicago*, 927 F.2d 957, 960 (7th Cir. 1991) ("[A]t some point delay must ripen into deprivation, because otherwise a suit alleging deprivation would be forever premature.").

46. Dr. Morrell maintains his intent to be listed in the directory. If a court ordered Defendants to end their racial discrimination, Dr. Morrell would immediately agree to be listed. And if necessary, he would resubmit his application and complete any other required steps at the earliest available opportunity.

47. Dr. Morrell is participating in this case both as an individual plaintiff and as a standing member of Do No Harm. Do No Harm and Dr. Morrell seek all the same relief, except that only Dr. Morrell seeks compensatory and punitive damages and an injunction specific to his application.

## CLAIM FOR RELIEF
## Violation of the Civil Rights Act of 1866
## 42 U.S.C. §1981

48. Plaintiffs repeat and reallege the preceding allegations.

49. Under §1981, "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts." 42 U.S.C. §1981(a). The statute has a private right of action for equitable relief and damages, including compensatory and punitive damages. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

50. Section 1981 bans racial discrimination in contracting by private actors, including Defendants. *See AAER v. Founders First*, 2024 WL 3625684, at *3 (N.D. Tex. July 31) (citing *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986)); *Johnson*, 421 U.S. at 459-60.

51. The statute's "broad terms" bar discrimination "against, or in favor of, any race," including against whites. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). Titled "Equal rights under the law," §1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019), by protecting the "equal right of all persons … to make and enforce contracts without respect to race," *Domino's Pizza v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up).

52. The statute protects the right to "make … contracts," 42 U.S.C. §1981(a), so whether "a contractual relationship … already exist[s]" is irrelevant because the law "protects the would-be contractor along with those who already have made contracts," *Domino's Pizza*, 546 U.S. at 476. Because of that fact, a defendant violates "§1981 when, for racially motivated reasons, they prevented individuals who 'sought to enter into contractual relationships' from doing so." *Id.* The directory is doing so here.

53. The directory is a contract. Under §1981, a contract is merely "an agreement to do, or refrain from doing, a particular thing, upon sufficient consideration." *AAER v. Fearless Fund Mgmt.*, 103 F.4th 765, 775 (11th Cir. 2024). The directory fits that definition: doctors receive access to a potentially lucrative revenue stream in exchange for accepting various terms, including the obligation to maintain the high-quality, personally verified listings that set the directory apart from other directories, allowing the directory to "retain" their information, and giving up certain "intellectual property rights" claims against the directory. *Terms of Use*; *Privacy Policy; see also Founders First*, 2024 WL 3625684, at *3 n.7; *supra* ¶¶17-29. Those reciprocal promises

and performances supply consideration. The directory's right to remove a profile does not transform the reciprocal performance rendered while a profile is active into a gift.

54. Dr. Morrell had actual knowledge of the Terms of Use Agreement before he submitted his application. He read the Agreement and understood himself to be bound by it—including the "responsibility" to keep his "personal information and web links accurate, updated, and complete" once he was listed on the directory. *See Terms of Use*.

55. Dr. Morrell manifested his assent to the Agreement by "using" the website to submit his application with the knowledge that doing so would leave him bound by the Agreement. *See Terms of Use*; *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). But by making him waive his rights yet denying him the ability to be listed on the directory, Defendants denied Dr. Morrell the "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b).

56. Dr. Morrell's application also constituted an effort to "make" contracts, §1981(a)—that is, to enter the same proposed contractual relationship that the directory forms with accepted physicians. Dr. Morrell was ready and willing to enter that relationship and satisfy its terms, but Defendants refused to do so because of his race. *See Domino's Pizza*, 546 U.S. at 476.

57. Doctors also have contracts with their patients. *See Downing v. Phelps Mem'l Hosp.*, 2020 WL 4570440, at *7 (S.D.N.Y. Aug. 7).

58. The directory is an "intermediary and conduit connecting" those patients and doctors. *Daniels v. Pipefitters' Ass'n*, 945 F.2d 906, 915 (7th Cir. 1991). Indeed, the directory is designed to help doctors "grow [their] practice" and their "brand" by connecting doctors with patients they otherwise would not encounter. *See How To List Your Practice*. Consistent with that design, a listing on the directory would ensure Dr. Morrell will reach many patients that he otherwise never would.

59. So when the directory did not list Dr. Morrell, it "interfere[d]" to "intentionally depriv[e]" him of the opportunity "to enter into contracts" with those patients based on his race, and that "discrimination falls squarely within the prohibition of §1981." *Daniels*, 945 F.2d at 915.

60. The directory's racial discrimination is intentional. "[P]roof of a facially discriminatory … policy" is "direct evidence of discriminatory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). That "direct evidence" is present here because the directory facially discriminates against all non-black doctors by excluding them from the directory. And even if the directory was facially neutral, it intentionally discriminates based on race in effect and by design. Indeed, the directory's name—Find A Black Doctor—tells physicians and patients alike who is welcome and who is not. *Accord Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977). Defendants admit the directory is only for "black physicians and dentists." *See About Us*. And the fact that 100% of the doctors listed on the directory are black is a stark disparity that alone proves Defendants' race-based intent.

61. Because §1981 applies to the directory, the directory's racial discrimination is subject to strict scrutiny. *See Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003); *Adarand Constructors v. Pena*, 515 U.S. 200, 227 (1995). Strict scrutiny is "the most demanding test" known to law. *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). And Defendants bear the burden of proving that the directory satisfies that test by showing that its racial exclusion is "narrowly tailored" to further a "compelling interest." *Fisher v. UT-Austin*, 570 U.S. 297, 310 (2013) (cleaned up); *SFFA*, 600 U.S. at 206-07. Defendants cannot meet that "daunting" standard. *SFFA*, 600 U.S. at 206.

62. Defendants' interests are not compelling. The Supreme Court "ha[s] identified only two compelling interests" that satisfy strict scrutiny. *Id.* at 207. "One is remediating specific, identified instances of past discrimination that violated the Constitution or a statute," and the other is "avoiding imminent and serious risks to human safety in prisons." *Id.* Neither exists here. The directory's application does not even ask doctors if they suffered prior discrimination. And an amorphous interest in diversity is not compelling. *See id.* at 220.

63. The directory is not narrowly tailored to achieve any compelling interest. By barring all non-blacks from the directory, Defendants effectively impose an illegal "quota," which is not narrowly tailored to any permissible goal. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 507 (1989). The directory's race-based exclusion lacks any "logical end point." *SFFA*, 600 U.S. at 221. The directory's racial discrimination is based on impermissible racial stereotyping. *See id.* at 218. And to state the obvious, a blanket

exclusion of all non-blacks operates as a "negative" for non-blacks. *Id.* Defendants accordingly cannot show "the most exact connection between justification and classification" that strict scrutiny requires. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 (1986).

64. Section 1981 authorizes punitive damages when the defendant has "engaged in a discriminatory practice … with malice or reckless indifference to the federally protected rights of an aggrieved individual." *Wiercinski v. Mangia 57*, 787 F.3d 106, 115 (2d Cir. 2015).

65. Defendants' explicit racial exclusion demonstrates "malice or reckless indifference to the federally protected rights" of doctors. *Id.* All racial discrimination is invidious, and Defendants intentionally discriminate against doctors based on the immutable color of their skin. As sophisticated actors in the medical services industry, Defendants know racial discrimination is illegal. *See United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 744 (7th Cir. 2021). Yet Defendants proudly acknowledge the directory is open only to "black physicians and dentists." *See About Us.*

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and provide the following relief:

A. A declaratory judgment that the directory violates 42 U.S.C. §1981.

B. A permanent injunction prohibiting Defendants from excluding doctors from the directory based on race, seeing the race of applicants to the directory, or otherwise considering race as a factor when deciding who can be listed on the directory.

C. A permanent injunction ordering Defendants to accept Dr. Morrell's application and add him to the directory.

D. Compensatory and punitive damages to Dr. Morrell.

E. Nominal damages.

F. Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

G. All other relief that Plaintiffs are entitled to.

Dated: May 19, 2026
Amended: August 17, 2026

Respectfully submitted,

*/s/ Cameron T. Norris*

Thomas R. McCarthy*
Cameron T. Norris*
Frank H. Chang*
Daniel M. Vitagliano†
SDNY Bar No. 5856703
James E. Marmaduke*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
dvitagliano@consovoymccarthy.com
jmarmaduke@consovoymccarthy.com

* *Admitted pro hac vice*
† *Supervised by principals of the firm admitted to practice in VA*