**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DO NO HARM and DR. TRAVIS MORRELL,<br><br>Plaintiffs,<br><br>v.<br><br>DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN,<br><br>Defendants. | Case No. 1:26-cv-04152-CM<br><br>Judge Colleen McMahon |

**DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................................... i
TABLE OF AUTHORITIES ..................................................................................... ii
INTRODUCTION ..................................................................................................1
BACKGROUND ....................................................................................................2
I. The Find A Black Doctor Website Strives to Improve Health Outcomes for the African American Community.............................................................................................. 2
II. The Find A Black Doctor Website Includes an Online Form for Physicians. ................... 3
III. Dr. Morrell Submitted His Information Through the Online Form. ................................. 4
LEGAL STANDARD.............................................................................................4
ARGUMENT..........................................................................................................5
I. Find A Black Doctor Is a Curated Directory and Does Not Involve Contracts................. 5
A. Defendants Do Not Enter Contracts with the Listed Doctors. ...............................6
i. Defendants' Unilateral Choice to Feature a Doctor in the Curated Listing Does Not Create a Contract. .....................................................................7
ii. Physicians Do Not Provide Consideration to Defendants in Exchange for Listing. ........................................................................................................9
a. Vague Responsibilities Buried in the Terms of Service Cannot Serve as Consideration for the Listings......................................................................10
b. The Listed Doctors' Consent to Share Data Is Not Made in Exchange for the Listing. ...........................................................................................................12
c. The Terms of Use Are Made in Exchange for Accessing the Website, Not in Exchange for the Listing...............................................................................13
iii. Plaintiffs' Analogies to Fearless Fund and Founders First Fail...........................14
B. Plaintiffs' Section 1981 Claim for Interference with Prospective Third-Party Contract Also Fails. .........................................................................................15
II. Plaintiffs' Section 1981 Claim Should Be Dismissed Because the First Amendment Protects Defendants' Expression. ...................................................................... 17
A. Choosing Information to Include and Exclude from the Find A Black Doctor Directory Is Protected Editorial Curation Under the First Amendment. ..............18
B. The Expressive Intent of the Find A Black Doctor Index Further Supports the Noncontractual Nature of the Listings. ..............................................................20
III. The Amended Complaint Should Be Dismissed with Prejudice. .................................... 21
CONCLUSION......................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Alliance for Equal Rights v. Fearless Fund Mgmt. LLC*,
103 F.4th 765 (11th Cir. 2024) ....................7, 14, 15

*American Alliance for Equal Rights v. Founders First Cmty. Dev. Corp.*,
No. 4:24-cv-00327, 2024 WL 3625684 (N.D. Tex. July 31, 2024)....................14, 15

*Ams. For Prosperity Found. v. Bonta*,
594 U.S. 595 (2021)....................20

*Annabi v. New York Univ.*,
No. 22-CV-3795, 2023 WL 6393422 (S.D.N.Y. Sept. 29, 2023)....................6, 8, 9, 12

*Arkansas Ed. Television Comm'n v. Forbes*,
523 U.S. 666 (1998)....................18

*Bampoe v. Coach Stores, Inc.*,
93 F. Supp. 2d 360 (S.D.N.Y. 2000)....................5, 6

*Bathold v. Hugo Boss Retail, Inc.*,
No. 25-CV-3045 (CM), 2026 WL 1679415 (S.D.N.Y. June 10, 2026)
(McMahon, J.)....................5

*Carter v. Ralph Lauren Corp.*,
683 F. Supp. 3d 400 (S.D.N.Y. 2023)....................10

*Cheves v. Trs. of Columbia Univ.*,
931 N.Y.S.2d 877 (1st Dep't 2011)....................8

*Chiapparelli v. Baker, Kellogg & Co.*,
252 N.Y. 192 (1929)....................7, 8, 9

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985)....................20

*Daniels v. Pipefitters' Ass'n Loc. Union No. 597*,
945 F.2d 906 (7th Cir. 1991)....................15, 17

*Domino's Pizza v. McDonald*,
546 U.S. 470 (2006)....................5

*Garcia v. Bill Me Later, Inc.*,
No. 13-CV-8701, 2015 WL 4578613 (S.D.N.Y. July 28, 2015)....................5

*Ginx, Inc. v. Soho All.*,
720 F. Supp. 2d 342 (S.D.N.Y. 2010)
(McMahon, J.)....................5, 16, 17

*Groome Res. Ltd. v. Parish of Jefferson*,
234 F.3d 192 (5th Cir. 2000) ....................4

*Harris v. Allstate Ins. Co.*,
300 F.3d 1183 (10th Cir. 2002) ....................16

*Jackson v. Wells Fargo Home Mortg.*,
No. 15-CV-5062, 2018 WL 8369422 (E.D.N.Y. Aug. 10, 2018)....................8

*Jian Zhang v. Baidu.com Inc.*,
10 F. Supp. 3d 433 (S.D.N.Y. 2014)....................19, 20

*Klauber Bros. v. Westchester Lace Inc.*,
No. 87 CIV. 7370, 1989 WL 31679 (S.D.N.Y. Mar. 30, 1989) ....................8, 9, 12

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.*,
574 F. Supp. 3d 205 (S.D.N.Y. 2021)....................6, 7

*Lebedev v. Blavatnik*,
193 A.D.3d 175 (1st Dep't 2021) ....................7

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)....................18

*Owoyemi v. Credit Corp. Sols. Inc.*,
596 F. Supp. 3d 514 (S.D.N.Y. 2022)....................21, 22

*Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc.*,
No. 21-CV-5749, 2023 WL 7222736 (E.D.N.Y. Nov. 2, 2023)....................12

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004)....................11, 12

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988)....................20

*Robledo v. Bond No. 9*,
965 F. Supp. 2d 470 (S.D.N.Y. 2013)....................15, 16

*Runyon v. McCrary*,
427 U.S. 160 (1976)....................11, 20

*Schroeder v. City of Chicago*,
927 F.2d 957 (7th Cir. 1991) ....................4

*Spain v. Ball*,
928 F.2d 61 (2d Cir. 1991)....................22

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)....................10

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)....................21

*Van Bortel v. Ford Motor Co.*,
621 F. Supp. 3d 380 (W.D.N.Y. 2022)....................10, 11, 13

*Wagman v. Chater*,
No. 94 CIV. 7243 (DC), 1996 WL 219646 (S.D.N.Y. 1996)....................8

**Statutes**

42 U.S.C. § 1981.................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 15(a)(2)....................21

Federal Rule of Civil Procedure 12(b)(6)....................4, 21, 22

Restatement (Second) of Contracts § 33 (Am. L. Inst. 1981)....................8

## INTRODUCTION

Plaintiffs express their discontent with the mere existence of Find A Black Doctor, a website that posts targeted healthcare resources, including articles and a free online directory that publishes a curated list of Black physicians for patients, by alleging it violates Section 1981's contract clause. But despite Plaintiffs' attempt, Section 1981 protects only the right to "make and enforce contracts," and Plaintiffs' Amended Complaint ("Am. Compl.") still fails to identify any contract at all.

A free, voluntary online directory listing—without any fee, reciprocal promise, or guaranteed benefit—is not a contract. There is no bargained-for exchange sufficient to establish consideration. Physicians do not give anything to Dr. Dina Strachan in exchange for a listing. To the extent those physicians benefit from being listed, that benefit comes from Dr. Strachan's unilateral decision that listing a physician furthers her goal to provide high-quality information about Black physicians and dentists in active clinical practice to patients when that is their preference. The physicians have no contractual right to benefit from Dr. Strachan's speech, which she can withdraw at any time and for any reason. Because Plaintiffs have not pled facts which could support a claim that Dr. Strachan enters into a contractual agreement with ***any*** physician, Plaintiffs cannot support their claim that Dr. Strachan discriminated against Dr. Travis Morrell by not adding him to the directory. Section 1981 simply does not reach the challenged actions. Furthermore, the First Amendment freedom of expression protects Dr. Strachan's editorial curation of the online directory.

Therefore, even accepting Plaintiffs' allegations as true, the Amended Complaint fails as a matter of law because there is no contract, no identifiable injury, and the First Amendment bars the relief sought.

## BACKGROUND

### I. The Find A Black Doctor Website Strives to Improve Health Outcomes for the African American Community.

As alleged in the Amended Complaint,[1] Find A Black Doctor is a website of which the "stated purpose" is to "improve health outcomes particularly in the African American community." Find A Black Doctor, perma.cc/T9D2-PAT8 ("About Us"); *see also* Am. Compl. ¶ 2 (incorporating About Us by reference). The directory's approach is based on research that shows "the importance of seeking a primary care doctor who shares [patients'] racial or cultural background cannot be overstated" because Black "men are 'more likely to follow through with preventative health screenings if their doctor [is] also a [Black] man.'" Find A Black Doctor, perma.cc/GVV4-437A ("Why You Should Look For 'A Black Primary Care Doctor Near Me'"); *see also* Am. Compl. ¶ 2 (incorporating Why You Should Look by reference). Additionally, "'a [Black] male primary care doctor'" can help bridge "'disparities'" in health care by "'fostering a deeper understanding of the unique health concerns and experiences faced by [Black] men'" and provide "'culturally competent care and advocacy.'" Why You Should Look. Find A Black Doctor hosts articles, blog posts, and other content written by physicians addressing the health concerns of Black patients, and it maintains "an internet directory of physicians in active clinical practice"—an idea that arose out of "dissatisfaction with an earlier website that 'wasn't specifically racially targeted.'" Am. Compl. ¶¶ 14, 32, 35. Consistent with its mission, the directory curates its listing of Black physicians, *id.* ¶¶ 26, 29, which is the component Plaintiffs challenge under 42 U.S.C. § 1981. *Id.* ¶¶ 5, 48–65.

---

[1] For purposes of this Motion, Defendants assume all well-pled facts as true. Defendants reserve all rights to deny or otherwise contest any of those facts, should this litigation progress.

## II. The Find A Black Doctor Website Includes an Online Form for Physicians.

The directory allows physicians to complete an online form, providing their name, address, education, payment methods, and whether their business is Black owned but not their race. Find A Black Doctor, perma.cc/N6QZ-2XDY ("Web Form"); *see also* Am. Compl. ¶ 17 (incorporating Web Form by reference). The Amended Complaint alleges that the directory "represents" that an accepted physician will receive a "standardized physician profile" and that Defendants tell doctors to "[m]ake yourself available to the many patients looking for a doctor just like you[.]" Am. Compl. ¶¶ 16, 18. Sending information via Web Form to the directory to be considered prior to listing, however, is not an acceptance, an offer, or an enforceable promise by Defendants. The Amended Complaint itself treats the Web Form as an application which Defendants may accept or reject and alleges that acceptance occurs only when Defendants create and publish the physician profile. *Id.* ¶¶ 17, 29, 44. Physicians "consent to have [their] information listed" by sending their information through the Web Form, but they do not pay to be listed, are not guaranteed a spot on the list, and are informed that Find A Black Doctor "reserves the right to remove" even listed profiles at any time. *See* Am. Compl. ¶¶ 18, 22, 26, 53; *see also* Web Form.

The website also maintains Terms of Use and a Privacy Policy; both are available to every website visitor regardless of race. Find A Black Doctor, perma.cc/T9D2-PAT8 ("Terms of Use"); *see also* Am. Compl. ¶ 4 (incorporating Terms of Use by reference); Find A Black Doctor, perma.cc/VQC5-5LRT ("Privacy Policy"); *see also* Am. Compl. ¶ 28 (incorporating Privacy Policy by reference). Under the Privacy Policy, when a visitor uses a form to "post information," subject to Dr. Strachan's review and decision, the website "may retain such information." Privacy Policy; *see also* Am. Compl. ¶ 28. The website also maintains the How to List Your Practice page, which explains the content of listed physician profiles, including: a short biography, a list of credentials, specialty areas, and contact information. Find A Black Doctor, perma.cc/DV8N-

EKSW ("How to List Your Practice"); *see also* Am. Compl. ¶¶ 16, 18 (incorporating How to List Your Practice by reference). Although Plaintiffs intentionally omit it from their Amended Complaint, the page also states in bold, all-caps font, that a listed physician's profile and the content therein are "**FREE**[.]" How to List Your Practice (emphasis in original).

### III. Dr. Morrell Submitted His Information Through the Online Form.

Plaintiff Dr. Travis Morrell is a white, licensed physician and board-certified dermatologist and dermatopathologist, and his practice is not Black owned. Am. Compl. ¶¶ 9, 37–38. Dr. Morrell alleges he submitted his information through the online form on December 23, 2025 and followed up by email on February 23, 2026 without receiving a response. *Id.* ¶¶ 42, 44. He maintains that he wants to be listed in the directory. *Id.* ¶ 46.

Although Plaintiffs do not allege that Dr. Morrell received any communication from Dr. Strachan rejecting him, Plaintiffs allege that his submission was an "application" that Defendants "constructively rejected" and that listing him on the directory would constitute a contract.[2] *Id.* ¶¶ 44–45, 53.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bathold v. Hugo Boss Retail, Inc.*, No. 25-CV-3045 (CM), 2026 WL 1679415, at *3 (S.D.N.Y. June 10, 2026) (McMahon, J.).

[2] The Amended Complaint does not reference, and Defendants are unaware of, any statute or legal holding supporting the proposition that a private party has a certain number of days to respond to a web form containing physician information before "constructive" rejection sets in. Rather, the law which Plaintiffs include in their Amended Complaint relates to public agencies with a statutory mandate to provide timely benefits to applicants. *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 198–200 (5th Cir. 2000); *Schroeder v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991). Tellingly, the Amended Complaint does not allege that Defendants were ever aware of Dr. Morrell's submission prior to the filing of the Amended Complaint.

Section 1981 "protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race," which includes the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *Garcia v. Bill Me Later, Inc.*, No. 13-CV-8701, 2015 WL 4578613, at *2 (S.D.N.Y. July 28, 2015) (cleaned up) (citing *Domino's Pizza v. McDonald*, 546 U.S. 470, 474–75 (2006)); 42 U.S.C. § 1981(b). As a result, Section 1981 offers relief only "so long as the plaintiff has or would have rights under [an] existing or proposed contract." *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 357 (S.D.N.Y. 2010), *as corrected* (Aug. 19, 2010) (cleaned up). To state a claim under Section 1981, a plaintiff must show "the existence of a contractual relationship" within the "ordinary" meaning of contract. *Bampoe v. Coach Stores, Inc.*, 93 F. Supp. 2d 360, 375 (S.D.N.Y. 2000).

## ARGUMENT

Here, Plaintiffs' Section 1981 claim fails for several reasons. *First*, Plaintiffs fail to allege facts showing that the alleged discrimination concerned the making or enforcing of a contract. Neither Plaintiffs' alleged relationship with Defendants nor any listed doctor's relationship with Defendants upon submitting an online form is contractual. *Second*, the relationship between Dr. Morrell and hypothetical future patients—Plaintiffs' "conduit" theory, Am. Compl. ¶ 58,—is too attenuated to support a Section 1981 claim for prospective interference with third-party contracts. *Furthermore*, the First Amendment protects Defendants' right to curate that list as they see fit.

### I. Find A Black Doctor Is a Curated Directory and Does Not Involve Contracts.

Section 1981 protects the right to "make and enforce contracts," and there is no indication that Congress intended the term "contract" to carry any meaning other than its "ordinary"

meaning.[3] *Bampoe*, 93 F. Supp. 2d at 375 (citation omitted); 42 U.S.C. § 1981(a). For the statute to apply, Plaintiffs must prove the interaction at issue constitutes an enforceable contract under ordinary contract formation principles: "offer, acceptance ..., consideration, mutual assent, and an intent to be bound." *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021) (citation omitted).

Plaintiffs propose two candidate "contracts" in an unsuccessful attempt to bring Defendants' speech within the statute's ambit. *First*, Plaintiffs propose that the relationship between Defendants and the doctors Defendants add to the curated listing is contractual (and that Defendants denied Dr. Morrell the opportunity to enter such a contract). Am. Compl. ¶¶ 51–52, 65. This theory fails because Plaintiffs fail to plead mutual consideration between Defendants and the listed doctors. *Second*, Plaintiffs propose that Defendants' directory serves as a "conduit" to future contracts between Dr. Morrell and hypothetical patients. *Id.* ¶ 58. This theory fails because, as a matter of law, a curated directory on a website is not a "conduit" to future contracts.

**A. Defendants Do Not Enter Contracts with the Listed Doctors.**

The relationship between Defendants and the doctors listed on the website is not contractual. "To establish an enforceable contract under New York law, there must be an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Annabi v. New York Univ.*, No. 22-CV-3795, 2023 WL 6393422, at *3, *6 (S.D.N.Y. Sept. 29, 2023) (cleaned up). Here, essential elements necessary to create a contract are missing, specifically consideration and mutual assent.

[3] For completeness, Section 1981 also protects the right "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property," none of which is at issue here. 42 U.S.C. § 1981.

Consideration is a necessary ingredient for an enforceable contract. *See Lamda Sols. Corp.*, 574 F. Supp. 3d at 213 (a complaint fails to sufficiently plead the existence of a contract absent factual allegations regarding its formation). Consideration "consists of either a benefit to the promisor or a detriment to the promisee"—that is, some right, interest, profit, or benefit accruing to one party or some forbearance, detriment, loss, or responsibility undertaken by the other. *Lebedev v. Blavatnik*, 193 A.D.3d 175, 183 (1st Dep't 2021) (citation omitted). In short, consideration requires a bargained-for exchange of promises or performance.

Defendants operate the index with complete discretion to add or remove listings to promote their "vital" interest in championing "access, education, and resources to improve health outcomes." Defendants owe ***nothing*** to the doctors they feature, who owe nothing in return. Plaintiffs do not—and cannot—allege that Defendants promise to list doctors who use the provided Web Form to send their information to the directory. Plaintiffs' analogy to *Fearless Fund*—where applicants contractually bound themselves to contest rules and gave away meaningful publicity rights in exchange for the ***promise*** of a cash prize—only underscores how different these facts are. Am. Compl. ¶ 53 (citing *American Alliance for Equal Rights v. Fearless Fund Mgmt. LLC*, 103 F.4th 765, 775 (11th Cir. 2024)). Defendants are not contracting with ***any*** doctors, and Section 1981 does not reach these facts.

### *i. Defendants' Unilateral Choice to Feature a Doctor in the Curated Listing Does Not Create a Contract.*

Defendants make no enforceable promise to ***any*** doctor, regardless of race. Appearing on a website's index is not a contractual relationship, and Section 1981 does not reach this conduct.

A party must make specific promises about the nature and extent of performance for a contract to form. "Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement." *Chiapparelli v. Baker,*

*Kellogg & Co.*, 252 N.Y. 192, 200 (1929); *Jackson v. Wells Fargo Home Mortg.*, No. 15-CV-5062, 2018 WL 8369422, at *10 (E.D.N.Y. Aug. 10, 2018), *report and recommendation adopted*, No. 15-CV-5062, 2019 WL 1376840 (E.D.N.Y. Mar. 27, 2019), *aff'd*, 811 F. App'x 27 (2d Cir. 2020) (quoting *Chiapparelli*, 252 N.Y. at 200). "When provisions of supposed promise leave promisor's performance optional or entirely within discretion, pleasure and control of promisor, the promise is illusory." *Klauber Bros. v. Westchester Lace Inc.*, No. 87 CIV. 7370, 1989 WL 31679, at *3 (S.D.N.Y. Mar. 30, 1989); *see also Wagman v. Chater*, No. 94 CIV. 7243 (DC), 1996 WL 219646, at *3 (S.D.N.Y. 1996) (explaining that if an agreement is "unduly vague, indefinite, or unspecific, or where the person making the promise is free to perform or not as he so chooses, the agreement is illusory and will not be enforced."). And relatedly, there can be no "mutual assent" (i.e., "meeting of the minds") when an alleged promisor's statements are "so general as to be unenforceable" because "they do not indicate what kinds of benefits would be available [or] for how long [the alleged promisor] was obligated to provide benefits." *See Annabi*, 2023 WL 6393422, at *6, *9 (granting motion to dismiss); *see also Cheves v. Trs. of Columbia Univ.*, 931 N.Y.S.2d 877, 877 (1st Dep't 2011); Restatement (Second) of Contracts § 33 (Am. L. Inst. 1981) (terms of an agreement must be "reasonably certain" to be enforceable).

As a matter of law, the facts pled are insufficient for contract formation. The Amended Complaint alleges that the directory "represents" that an accepted physician will receive a "standardized physician profile" and that defendants set up and publish the profile, host it, and make it available through the directory's specialty- and location-based search functions. Am. Compl. ¶¶ 18, 29. But Plaintiffs' allegations fail to support contract formation.

Defendants expressly reserve the right to remove a profile at any time and make no enforceable "promises" or "representations" about how long any listing will remain available. The

documents which Plaintiffs incorporate into their Amended Complaint make clear that, after "grant[ing]" doctors a place on the listing, Defendants may "remove the profile at any time." Web Form. Defendants have an "unlimited right" to remove listings. *See Chiapparelli*, 252 N.Y. at 200. It is "entirely within [Defendants'] discretion, pleasure and control" to choose the manner and duration of those listings. *See Klauber Bros.*, 1989 WL 31679, at *3. And when Defendants choose to include a doctor on the listing, they do so without indicating for how long they would provide this benefit. *Cf. Annabi*, 2023 WL 6393422, at *9. Thus, even if Defendants provide the listing while it is active, Plaintiffs do not—and cannot—allege a binding promise by Defendants to continue providing it for *any definite period*—a necessary component of an enforceable contract. For the same reasons as in these cases, there are no contracts pled here.

***ii. Physicians Do Not Provide Consideration to Defendants in Exchange for Listing.***

Equally fatal to Plaintiffs' contract theory, the doctors promise nothing to Defendants—an independent reason that the relationship is not contractual. Consideration must be mutual and bargained for. *See Annabi*, 2023 WL 6393422, at *6 ("For consideration to be valid, it must be 'bargained for,' meaning that the promisor must seek it in exchange for his promise, and the promisee must give it in exchange for that promise."). Defendants do not run a for-profit advertising service where doctors pay a fee in exchange for a listing. Am. Compl. ¶ 7. Rather, Defendants provide free advocacy to support "access, education, and resources to improve health outcomes particularly in the African American Community." About Us. Tellingly, the web page describing listings on the directory explains in bold, all-caps font that listings are "**FREE**[.]" How to List Your Practice (emphasis in original).

The Amended Complaint states that doctors receive a listing "in exchange for accepting various terms, including the obligation to maintain high-quality, personally verified listings." Am.

Compl. ¶ 53. However, Plaintiffs' conclusory allegation that doctors make promises "in exchange" for the listing is not borne out by the facts Plaintiffs pled.[4]

*a. Vague Responsibilities Buried in the Terms of Service Cannot Serve as Consideration for the Listings.*

The allegation that Dr. Morrell "understood himself to be bound" by the Terms of Use Agreement available to every visitor of the directory irrespective of race, and his purported "responsibility" to keep his "personal information and web links accurate, updated, and complete[,]" does not establish a contractual obligation or reciprocal promise sufficient to state a Section 1981 claim. *Id.* ¶ 54. As a matter of law, that term is unenforceable because: (1) the listed doctors never agreed to it, and (2) it is too vague to be contractually binding.

The Terms of Use are unenforceable. Unless a website's terms are "presented in a clear and conspicuous way[,]" those terms are an unenforceable "browserwrap" agreement under New York law. *Carter v. Ralph Lauren Corp.*, 683 F. Supp. 3d 400, 413–14 (S.D.N.Y. 2023). A link at the footer of a webpage is not "clear and conspicuous." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 23 (2d Cir. 2002) (refusing to enforce terms of use that "would have become visible to plaintiffs only if they had scrolled to the next screen"). Here, as in *Specht*, the webpages Plaintiffs incorporate by reference show objectively that a user must scroll to reach a link to the terms, which is located at the bottom of each page. *Id.* Moreover, Plaintiffs' conclusory allegation that the link was "conspicuous" is a legal conclusion entitled to no weight. *Van Bortel*, 621 F. Supp. 3d at 385 ("The court need not accept conclusory allegations or draw unreasonable inferences"). Thus, the "browserwrap" accessible only by scrolling is unenforceable as a matter of law.

[4] Even at the motion to dismiss stage, a complaint's legal conclusions are not subject to deference. *Van Bortel v. Ford Motor Co.*, 621 F. Supp. 3d 380, 385 (W.D.N.Y. 2022).

Further, it is irrelevant that Dr. Morrell "familiarize[ed] himself with the Terms of Use Agreement[,]" "had actual knowledge" of its provisions before providing his information to the directory, and "understood himself to be bound" by the Terms of Use. Am. Compl. ¶¶ 42, 54. The question under Section 1981 is not whether Dr. Morrell knew about the Terms of Use but whether those terms created a binding contract with ***all*** doctors who participated in the listing process—and if so, whether Dr. Morrell was denied the benefits of that contract. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976) (Section 1981 "is violated if a private offeror refuses to extend to [one race], solely because [of their race], the same opportunity to enter into contracts as he extends to white offerees"). Here, Plaintiffs appear to allege that the contract was simultaneously exclusively available to Dr. Morrell—by virtue of his uncommon diligence in clicking through the browserwrap—and also uniquely unavailable to Dr. Morrell by virtue of his race. Am. Compl. ¶¶ 42, 54. A Section 1981 claim cannot stand on such a paradox. Because the Terms of Use are not binding on any general population, a Section 1981 claim cannot stem from those—noncontractual—terms.

Nor does *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004), support Plaintiffs' position. Am. Compl. ¶ 55. *Register.com* was a breach-of-contract case in which the Second Circuit found assent to the relevant terms because the defendant repeatedly accessed the plaintiff's data with full knowledge that those specific uses were prohibited by the website's terms. The threshold question here is fundamentally different. *Register.com*, 356 F.3d at 401. Plaintiffs must first establish that any contract exists here at all, but they cannot.

And regardless, the "responsibility to keep accurate" language in the Terms of Use would be unenforceable even if agreed to. Terms of Use. The site provides no specifics on the nature of this so-called responsibility to ensure accuracy. *See id.* Moreover, the terms are internally

inconsistent as to who holds the responsibility. *Compare id*. ("**It is the user's responsibility to verify**") *with id*. ("It is [the Health Professional's] responsibility to keep … accurate") *with id.* ("The information and web links will be reviewed and checked [by Defendants]"). Similarly, the Terms of Use explicitly explain to "Health Professionals" that visitors to the site are expected to "use the materials on this site as reference only." *Id*. And the only penalty for inaccurate information is delisting from the website—a "penalty" Defendants could already impose for ***any*** reason, at any time. Am. Compl. ¶ 26. Taken together, it is clear that no party is expected to have an enforceable obligation to ensure accuracy, and the Terms of Use highlight that Defendants offer no guarantee of accurate listings. Any alleged promise from the physicians is hollow. *See Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc.*, No. 21-CV-5749, 2023 WL 7222736, at *6, *7 (E.D.N.Y. Nov. 2, 2023) (finding no unilateral contract was formed where there was no guarantee that plaintiff's application would be accepted, plaintiff "never agreed to a set of terms and conditions," and defendants "allowed for unilateral cancellation"); *see also Annabi*, 2023 WL 6393422, at *9; *Klauber Bros.*, 1989 WL 31679, at *3.

*b. The Listed Doctors' Consent to Share Data Is Not Made in Exchange for the Listing.*

The Amended Complaint's allegations about commercial benefits do not alter the fact that any alleged "promises" made by listed doctors are ***not made in exchange*** for a listing. *Id.* ¶¶ 22–23, 26–30, 53. Plaintiffs allege that Defendants receive "commercial benefits" from listing doctors—including "Internet attention and traffic"—and that the directory is funded in part by "advertisers and sponsors." Am. Compl. ¶ 20. These "commercial benefits" are allegedly received in exchange for the "doctor's content, certifications, and upkeep," which "supply the value that Defendants solicit and use to operate, promote, and fund their online operations." *Id.* Any "commercial benefit" from the general incorporation of pop-up advertising derives from the mission-driven content of the website, including but not limited to the curated directory. And

incidental benefits to the website do not transform a doctor's voluntary submission into bargained-for consideration. Doctors give their information freely, with no guarantee that Defendants will list them or keep them listed. A voluntary surrender of one's own information, absent any bargained-for return promise, is legally a gift, not consideration for a contract. *See Van Bortel*, 621 F. Supp. 3d at 387–88 (dismissing breach of contract claim).

Plaintiffs allege that doctors "consent to have [their] information listed" and allow the directory to "retain" their information. Am. Compl. ¶¶ 22, 28. But that consent occurs the moment a doctor clicks the "Submit" button on the website ("Signature—I … consent to have my information listed"). Web Form; Privacy Policy ("If you ***choose*** to post information through our website(s) … we may retain such information also.") (emphasis added). A doctor who chooses to "relinquish" control of her information does so independently of any later promise (however illusory) by Defendants to provide listing services. *See Van Bortel*, 621 F. Supp. 3d at 387–88 (plaintiff's agreement to keep defendant's data confidential was made independently of, and not in exchange for, any promise by defendant).

*c. The Terms of Use Are Made in Exchange for Accessing the Website, Not in Exchange for the Listing.*

Plaintiffs also allege that doctors agree to "hold harmless" the website and submit to certain "legal jurisdiction and venues." Am. Compl. ¶ 27. But those agreements are simply a condition of accessing the "information services provided by Find A Black Doctor at no charge to users of the World Wide Web." Terms of Use. Even assuming that those terms are enforceable,[5] they are entered into in exchange for ***visiting*** the website. The Terms of Use do not create any right to a listing. Plaintiffs conflate the Terms of Use—which govern website access generally—with a

[5] As discussed above, the Amended Complaint does not establish that the Terms of Use or Privacy Policy are binding on website visitors generally.

nonexistent listings contract. But the Terms of Use neither promise a listing nor obligate Defendants to evaluate Web Forms containing physician information on any particular basis. *Id.* And the Amended Complaint makes no allegation that Defendants grant access to their website based on race. Rather, Dr. Morrell himself was able to access the website and is bound by the Terms of Use to the same extent as any other visitor. Am. Compl. ¶¶ 42–43. The allegations regarding the Terms of Use therefore do not establish the separate listing contract Plaintiffs need to state a Section 1981 claim.

***iii. Plaintiffs' Analogies to Fearless Fund and Founders First Fail.***

Unlike the grant funding in *American Alliance for Equal Rights v. Fearless Fund Mgmt. LLC*, 103 F.4th 765, 769–70 (11th Cir. 2024) and the accelerator admission program in *American Alliance for Equal Rights v. Founders First Cmty. Dev. Corp.*, No. 4:24-cv-00327, 2024 WL 3625684 (N.D. Tex. July 31, 2024)—both of which exchanged direct, tangible economic benefits for defined obligations—a free directory listing with no guaranteed benefits offers no concrete, bargained-for consideration. *Fearless Fund* had clear consideration on both sides. There, the defendant promised four winners "$20,000 apiece and digital tools to assist with business growth, as well as mentorship" and, in exchange, obtained rights to use the contestants' entries and to use their name, image, and likeness for promotional purposes. *Fearless Fund*, 103 F.4th at 769–70. Contestants released and indemnified the defendant and agreed to arbitrate disputes, and the defendant expressly referred to the arrangement ***as a contract***. *Id.* at 770.

Two key differences separate *Fearless Fund* from the Amended Complaint here. *First*, the grant money, digital tools, and mentorship were clear, enforceable, and binding promises. *Id.* at 769–70. Unlike Defendants, the *Fearless Fund* defendant could not withdraw funding or mentorship at will. *Id.* *Second*, only a "winning entrant" granted publicity rights and only "in return" for "$20,000 and valuable mentorship." *Id.* at 775. In *Fearless Fund*, agreeing to those

terms was a direct exchange for grant money, not a general condition buried in (unenforceable) terms of use available to all visitors. *Id.*

*Founders First* likewise involved clear consideration: a grant of "$50,000 per annual grant cycle to ten Texas small businesses operating under a business-to-business or business-to-government model," which the defendant did not dispute was a contract. 2024 WL 3625684, at *1, *3.

### B. Plaintiffs' Section 1981 Claim for Interference with Prospective Third-Party Contract Also Fails.

Perhaps recognizing the weakness of their primary allegation that Defendants contract with physicians for listing services, Plaintiffs provide a fallback argument that Defendants are "an intermediary and conduit" that "interferes to intentionally deprive [Dr. Morrell] of the opportunity to enter into contracts with patients." Am. Compl. ¶¶ 58–59 (cleaned-up). To make this argument, Plaintiffs liken Defendants' website to a trade union. *Id.* (citing *Daniels v. Pipefitters' Ass'n Loc. Union No. 597*, 945 F.2d 906 (7th Cir. 1991)). As a matter of law, this analogy fails. Defendants' web directory "bears an attenuated [and] haphazard connection" to Dr. Morrell's patient prospects and is not a "necessary intermediary and conduit" for Dr. Morrell to reach patients. *Daniels*, 945 F.2d at 915.

At the threshold, Plaintiffs' conduit theory fails because the Amended Complaint fails to identify "particular" contracts affected by Defendants' actions. The law requires Plaintiffs to plead the "particular … third party" that it would have contracted with, absent Defendants' actions. *See Ginx*, 720 F. Supp. 2d at 358, 360 (dismissing plaintiffs' § 1981 claim). As in *Ginx*, Plaintiffs merely make "vague and conclusory allegation[s] [that are] insufficient to state a deprivation of the right to make and enforce contracts that is protected by Section 1981." *Id.* at 361 (cleaned up); *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 477 (S.D.N.Y. 2013) (dismissing complaint that

"failed to identify specific contracts with identified customers"). Plaintiffs' generic allegation that the website is a "conduit connecting" unnamed and hypothetical patients to doctors is insufficient. Am. Compl. ¶ 58.

Substantively, courts within the Second Circuit have made clear that "liability under [Section] 1981 for interference with a third-party contract attaches only to persons who actually had the power or authority to prevent the plaintiffs from contracting with the third party." *See Ginx*, 720 F. Supp. 2d at 358; *see also Robledo*, 965 F. Supp. 2d at 477 (observing that "Section 1981 protects against the interference with a third-party contract, but liability only attaches to persons who actually had the power or authority to prevent the plaintiff from entering into a contract with the third party"). Thus, to plausibly allege a Section 1981 claim capable of withstanding Defendants' motion to dismiss, Plaintiffs must demonstrate that Defendants both possessed sufficient authority to significantly interfere with Plaintiffs' ability to obtain contracts with third parties and that Defendants actually exercised that authority to Plaintiffs' detriment. *Ginx*, 720 F. Supp. 2d at 358 (citing *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002)).

Plaintiffs' Amended Complaint fails for the reasons set out in *Ginx*. There, this Court dismissed a Section 1981 claim where plaintiffs alleged that defendant community leaders "prevented [plaintiffs] from entering into contracts to provide" services "to the persons who would have been patrons of [plaintiffs' restaurant]," in effect, "with the general public" due to racial animus. *Ginx*, 720 F. Supp. 2d at 358. This Court reasoned that plaintiffs' Section 1981 claim failed, given that a judge, not defendants, held the power required to prevent plaintiffs' restaurant from opening for business and obtaining a liquor license. *Id.* "Absent that judge's decision, no power on earth—certainly nothing [defendants] had any ability to do—could have prevented

[plaintiffs' restaurant] from opening its doors with a liquor license." *Id.* at 360. As in *Ginx*, Defendants neither possess the power nor the authority to prevent Plaintiffs from entering into contracts with prospective third-party patients, even those they claim they "otherwise would not encounter." Am. Compl. ¶ 58.

Even the judicial opinion Plaintiffs chose to cite in their Amended Complaint, *Daniels*, shows that Plaintiffs' conduit argument fails as a matter of law. The court in *Daniels* stressed the distinction between listings that "bear[] an attenuated or haphazard connection to contracting," such as "the want ads section of a newspaper," on the one hand, with a union referral service that was a "necessary intermediary and conduit connecting job opportunities to job referrals[,]" on the other hand. *Daniels*, 945 F.2d at 914–15. Only the latter can support a conduit theory under Section 1981. Despite Plaintiffs' allegation that the "directory is designed to help doctors grow their practice and their brand" Defendants' website is indisputably more like "the want ads" section of a newspaper than it is like a trade union. Am. Compl. ¶ 58. Regardless, Plaintiffs do not allege that a listing on Defendants' directory is an "indispensable step" in a doctor's efforts to reach patients, warranting dismissal of their claim. *Daniels*, at 914. Rather, Plaintiffs concede that Dr. Morrell maintains an active medical practice in which he "serves patients of all races, including black patients[,]" ***even though*** he is not listed on the directory. Am. Compl. ¶ 9. Thus, unlike in *Daniels*, Plaintiffs' claim fails.

## II. Plaintiffs' Section 1981 Claim Should Be Dismissed Because the First Amendment Protects Defendants' Expression.

Find A Black Doctor is a curated editorial directory. The sources Plaintiffs incorporate by reference into their Amended Complaint recite the directory's mission, its editorial selection process, and its advocacy for health care that will meet the needs of Black patients in great detail. *See* About Us; Why You Should Look; How to List Your Practice.

Plaintiffs ask this Court to order the directory to include Dr. Morrell, a white physician whose inclusion would not further the directory's message. *See generally* Am. Compl. Just as the distinction between a pure advertisement and an editorially curated directory makes clear that Section 1981 is inapplicable, it also makes clear that Plaintiffs' demands would impinge Defendants' First Amendment-protected activity. The directory's selection of which physicians to feature is protected editorial curation. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024). Plaintiffs' own sources, incorporated by reference into their Amended Complaint, establish the defense as a matter of law and, thus, warrant dismissal with prejudice.

### A. Choosing Information to Include and Exclude from the Find A Black Doctor Directory Is Protected Editorial Curation Under the First Amendment.

The First Amendment protects an editor's exercise of judgment over what material to include or exclude from a directory. "An entity 'exercis[ing] editorial discretion in the selection and presentation' of content is 'engage[d] in speech activity.'" *Cf. Moody*, 603 U.S. at 731 (quoting *Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998)). Dr. Strachan's decision about which physicians to feature on the Find A Black Doctor directory is precisely this kind of protected editorial judgment.

Courts in the Second Circuit have previously addressed the issue of editorial curation in the context of Section 1981 cases. A particularly relevant decision is *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014), which granted defendant's motion for judgment on the pleadings regarding plaintiffs' Section 1981, 1983, and 1985 claims that defendant Chinese company Baidu, which operated a search engine, unlawfully blocked information about China's democracy movement from search results in the United States. *Baidu*, 10 F. Supp. 3d at 435. The court in *Baidu* held that the First Amendment protected Baidu because plaintiffs' own complaint alleged that Baidu "exercise[d] editorial control over its search results" by limiting certain political

topics. *Id.* at 439–40. The *Baidu* plaintiffs' own allegations ruled out the possibility that Baidu was simply "'infrastructure or [a] platform that deliver[ed] content' in a neutral way[,]" undeserving of protection under the First Amendment. *Id.* at 440. The court dismissed the case because "[t]o allow such a suit to proceed would plainly violate the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Id.* at 440.

Principles considered in *Baidu* are relevant here. The purpose of the Find A Black Doctor directory is "to retrieve relevant information from the vast universe of data on the Internet and to organize it in a way that would be most helpful to the searcher." *Id.* at 438. Moreover, and although Plaintiffs now allege that the directory is "commercialized[,]" in *Baidu*, the court considered that the compilation of information was not "related *solely* to the economic interests of the speaker and its audience." Am. Compl. ¶ 20; *Baidu*, 10 F. Supp. 3d at 443 (emphasis in original). Despite Plaintiffs' allegation that Defendants "receive commercial benefit[]" from the directory, even if Defendants had a profit motive (which they do not)—like the defendant in *Baidu*—it "does not deprive [them] of the right to free speech." Am. Compl. ¶ 20; *Baidu*, at 443 (cleaned up). Defendants provide listings to curate a message intended for patients. To the extent the listed doctors benefit, it is from a revocable, noncontractual gift arising incidentally from the mission-driven and expressive nature of the activity. Plaintiffs admit as much, given that they cite to sources confirming that the directory's "mission is to be a partner which provides access, education and resources to improve health outcomes particularly helping patients in the African American community" by helping such patients "identify black doctors when that [is] their preference." About Us. Further, and as in *Baidu*, Plaintiffs concede that the editorial decisions are being made in service of Defendants' goals in operating the website by arguing that

Defendants' exclusion of Dr. Morrell is "intentional." Am. Compl. ¶ 32; *cf* Am. Compl. ¶ 35 (alleging that "Defendants do not author, customize, or editorially shape the individual listings."). Finally, and like *Baidu*, Defendants do not have the "power to silence anyone's voices." *Baidu*, 10 F. Supp. 3d at 441. After all, Defendants' decision not to list Dr. Morrell on the directory could not possibly silence him—it could not prevent him from marketing himself on any other internet forum, from finding patients through any other means, or from entering into contracts with patients he markets himself to. Thus, as in *Baidu*, Defendants' Motion should be granted because Defendants' right to editorially curate the content of the directory is protected activity under the First Amendment.

**B. The Expressive Intent of the Find A Black Doctor Index Further Supports the Noncontractual Nature of the Listings.**

Philanthropic transactions and activities are distinct from business transactions. *See, e.g.*, *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 787–88 (1988); *cf. Ams. For Prosperity Found. v. Bonta*, 594 U.S. 595, 606–15 (2021); *Runyon*, 427 U.S. at 168 (emphasizing that the schools in question were "commercially operated"). Under these precedents, the conduct at issue in this case—creating a curated list of doctors, at no charge to those doctors or their patients, to "improve health outcomes particularly in the African American community"—is expressive conduct. About Us; How to List Your Practice (stating that listings are "FREE" to physicians) (emphasis in original). Defendants' charitable intent in operating the Find A Black Doctor directory is clear, and the First Amendment and the ordinary principles of contract law are aligned in considering the relevance of this intent. Plaintiffs' allegations are only the most tenuous and minimal alleged indicia of contract. *See supra*, at pp. 7–13. This clearly cannot transform Defendants' expressive intent in curating its listing into a contract. Defendants convey gifts. They do not create contracts.

## III. The Amended Complaint Should Be Dismissed with Prejudice.

Leave to amend is not automatic. Although Federal Rule of Civil Procedure 15(a)(2) instructs courts to grant leave to amend "freely ... when justice so requires," a court must deny amendment where it would be futile, meaning it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 252 (2d Cir. 2017) (cleaned up). Where, as here, the deficiency is substantive rather than a matter of pleading, dismissal should be with prejudice. *Owoyemi v. Credit Corp. Sols. Inc.*, 596 F. Supp. 3d 514, 521 (S.D.N.Y. 2022).

Like in their original Complaint, Plaintiffs fail to plead the necessary elements to establish a contract. The Amended Complaint's allegations are merely a relabeling of their previous claims and legal conclusions—asserting that the relationship is "purely contractual and commercial," Am. Compl. ¶ 30, that purported "reciprocal promises" create consideration, *id.* ¶ 53, that Dr. Morrell's individual assent to the Terms of Use Agreement (which are available to all comers regardless of race or listing status) renders the terms enforceable, *id.* ¶ 55, and that listings are "not curated," *id.* ¶ 35—but Plaintiffs cannot cure the Amended Complaint's fundamental deficiencies. The facts remain unchanged: Defendants make no binding promise to any doctor, retain complete discretion to remove listings at any time, receive no consideration flowing from listed doctors, and exercise protected editorial judgment in the selection process of which doctors to feature. Plaintiffs have demonstrated that they will never be able to state a Section 1981 claim.

Because Plaintiffs cannot state a Section 1981 claim and any further amendment would be futile, the Court should dismiss this action with prejudice. *Owoyemi*, 596 F. Supp. 3d at 521 (dismissing claims with prejudice); *Spain v. Ball*, 928 F.2d 61, 62 (2d Cir. 1991) (affirming dismissal of complaint and reversing grant of leave to amend).

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Dated: August 31, 2026

Respectfully submitted,

*/s/ LaRue L. Robinson*

LaRue L. Robinson (lrobinson@willkie.com)*
Henry C. Thomas (hthomas@willkie.com)*
Chloe Smeltzer (csmeltzer@willkie.com)*
Kenedi McCormick (kmccormick@willkie.com)*
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle Dr.
Chicago, IL 60654-3406
Tel: (312) 728-9000

Andrew Lichtman (alichtman@willkie.com)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, NY 10019-6099
Tel: (212) 728-8000

ReNika Moore (rmoore@aclu.org)
Sarah Hinger (shinger@aclu.org)
Leah Watson (lwatson@aclu.org)*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

*Admitted *pro hac vice*

*Counsel for Defendants DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 31, 2026, I caused the foregoing memorandum to be filed electronically with the Clerk of the Court for the Southern District of New York by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: August 31, 2026

*/s/ LaRue L. Robinson*
LaRue L. Robinson (lrobinson@willkie.com)*
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle Dr.
Chicago, IL 60654-3406
Tel: (312) 728-9000

*Admitted *pro hac vice*

*Counsel for Defendants DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN*

**LOCAL RULE 7.1(C) CERTIFICATION**

I, LaRue L. Robinson, hereby certify that the foregoing memorandum of law complies with the word-count limitations set forth in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York and contains 6,613 words, exclusive of the caption, table of contents, table of authorities, signature blocks, certificate of service, and this certificate.

Dated: August 31, 2026

*/s/ LaRue L. Robinson*

LaRue L. Robinson (lrobinson@willkie.com)*
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle Dr.
Chicago, IL 60654-3406
Tel: (312) 728-9000

*Admitted *pro hac vice*

*Counsel for Defendants DRDINAMD LLC, d/b/a FIND A BLACK DOCTOR and DR. DINA STRACHAN*